## M. C. TINGLEY ET AL., ETC.,
## v.
## WILLIAM T. VAUGHN.

SCHOOL DIRECTORS ANNULLING CONTRACT—IMMORAL CONDUCT.—The court is of opinion that the evidence shows sufficient cause under the statute to justify the school directors in annulling appellee's contract for teaching.

APPEAL from the Circuit Court of Franklin county; the Hon. D. M. BROWNING, Judge, presiding. Opinion filed November 27, 1885.

The appellee here, and plaintiff below, claiming that appellants had employed him to teach their district school for five months, commencing Oct. 1, 1884, at $50 per month, and they having refused to permit him to enter upon the performance of the contract, brought this suit to recover for the entire time. To a declaration setting up such facts, the appellants pleaded the general issue, and two special pleas—the first averring that after the said employment and before the time he was to commence teaching, he, the plaintiff, was arrested and taken to Johnson county on a charge of assault with intent to commit a rape upon one Lizzie Murray, who made the affidavit, and that, upon examination, he was held to bail in the sum of $1,000, and that such matter became of public notoriety in defendant's school district, and for these causes they annulled the contract. The second averred that after the contract was made, and before the school was to commence, they learned that plaintiff was guilty of immorality and they therefore annulled the contract.

Issues were formed upon these pleas, a trial had before the court and jury, resulting in a verdict and judgment thereon for $100 in favor of appellee, and the defendants below appealed to this court.

Messrs. ROSE & LAGMAN and Mr. I. R. SPILMAN, for appellants.

Mr. F. M. YOUNGBLOOD, for appellee.

PILLSBURY, P. J.    The evidence in this case shows that the plaintiff below, in May, 1884, saw one or more of the directors and had a conversation with them about teaching their school, and a conclusion was reached that he might teach for five months at $50 per month, commencing Oct. 1st, and that they would enter into a written contract with him to that effect.

Afterward he was told by one of the directors that they had employed him to teach and he could have the school.

In the resolution of the board of directors adopted Sept. 2d, they recite that they had previously agreed with him to teach the school, but owing to dissatisfaction in the district, and deeming that they had sufficient cause, declare the agreement void and that a copy of the resolution be sent to said Vaughn.

Considering that provision of the statute contained in § 42 of the school law, requiring school directors to hold general meetings, and authorizing them to hold special meetings as occasion may require, at the call of the president or any two members, and prohibiting the transaction of official business except at such general or special meetings, it is extremely doubtful whether the evidence in this case is sufficient to show a contract of employment with the appellee binding upon the district.

There certainly is no direct proof that the directors ever entered into any contract with him at any such meeting of the board, or ratified any previously made by any of the directors.

But conceding for the purposes of this case, that the jury could properly infer that they had done so from the statements contained in the resolution of Sept. 2d, the question remains whether they were justified in annulling the contract with him.

From the record it appears that appellants introduced upon the trial, in support of their special pleas, copies of the affidavit, warrant and return, transcript of the justice of the peace and the recognizance of the appellee, certified by the

clerk of the Circuit Court of Johnson county, the original having been returned to him by the magistrate before whom the examination of appellee was had, from which it appears that on July 8, 1884, one Lizzie Murray made her affidavit that appellee had, on the 26th day of June preceding, committed an assault upon her with intent to commit rape, and thereupon the justice issued his warrant, upon which appellee was arrested in Franklin county, and taken to Johnson county for examination on July 23d, when, at the request of appellee, the cause was continued until August 1st, at which time an examination was had, the appellee being represented by counsel, and after a lengthy hearing the magistrate held appellee to bail in the sum of $1,000 for his appearance at the next November term of the Circuit Court of Johnson county, to answer any indictment that might be preferred against him for such offense. He gave bail and was released.

His arrest and being held to bail, after a full investigation, upon such a serious charge, created, as it naturally would, great dissatisfaction in appellants' school district to his teaching the school. The impression also obtained among many in the district that he was the father of two illegitimate children, and he thought proper to counteract it by procuring from the mothers a statement that he was. not responsible for the existence of their offspring.

Under these circumstances, when the time arrived for the commencement of the school, the appellants refused to receive him as the teacher. The appellants also introduced some thirteen witnesses, who testified that his reputation for morality in the district was bad, while he showed by some five witnesses that it was good. Without commenting upon the effect of this kind of evidence upon the issues, we prefer to give the appellee the benefit of his own testimony in his own vindication, explanatory of the circumstances out of which these charges arose. He says that "after the continuance of the case, I returned to Franklin county, and saw the directors, and told them about the matter, and told them I would clear up the matter to their satisfaction. * * * After I was tried and held to bail in Vienna I never went to see the di-

rectors any more until the day when the school was to have commenced. I presented myself at the schoolhouse, and told them I was ready to teach their school, and they would not let me. I understood before that time they had employed another teacher. They did not tell me the reason they had discharged me, but I understood the reason to be on account of my misfortune in Johnson county, and because I was accused of being the father of two bastard children." After stating that he was not guilty of the charge of bastardy, and that he had informed Mr. Jones, one of the directors, when questioned by him about the matter, that the rumors in that respect were absolutely false, and that he had obtained from each of the mothers a statement exonerating him, he then states, concerning the charge against him in Johnson county: "I told them all about my trouble in Johnson county with the girl, Lizzie Murray. Told them that the girl came into my room; she stayed there about two hours; think I could have had carnal intercourse with her if I had so desired; I did not want to do it; I felt of her; I had my hands all over her; when she started to go I tried to prevent her from going; she said if I did not let her go she would tell her brothers; then I let her go. I explained all this to the directors. I also explained to them all the bastardy cases, and that there was no truth in the charge of assault to rape, against me."

Giving him the benefit of all doubts that might arise upon his testimony as to all that occurred between him and the Murray girl, candor compels us to say that his explanation is not a very satisfactory one. He does not say that the girl was forward in her conduct toward him. No inducements appear to have been held out by her to cause him to take the liberties with her that he did—indeed it seems that he desired her to remain longer with him, but why he so desired is not made clear by his testimony. If the situation in which he was placed was uncongenial to his tastes it is difficult to understand why he should desire to prolong it.

It is quite likely true, as he asserts, that he was not guilty of an assault upon her with the intent to commit rape, but the circumstances, as detailed by himself, do not furnish very con-

Tingley v. Vaughn.

vincing proof of the existence of that innate virtue and morality that the law contemplates should be, and parents have a right to expect are, possessed by those who are employed by school officers to teach the boys and girls in our public schools. Ability to teach the branches prescribed by the statute does not alone qualify a person to teach our youth. In addition thereto, they should be persons who for their known virtue and morality are fitted to be trusted with the dearest treasures of the father and mother—the person and mind of their child. They should be entitled to, and receive the entire confidence of the patron and pupil. If suspicion of vice or immorality be once entertained against a teacher, his influence for good is gone. The parents become distrustful, the pupils contemptuous and the school discipline essen'ial to success is at an end. And especially is this so, when such immorality is of the character alleged against the appellee in this case. When the appellants annulled the contract he was under bail in the sum of $1,000 for his appearance to the circuit court to answer an indictment to be preferred against him for one of the most heinous and degraded crimes known to our law; and while his testimony destroys the element of criminality in the charge, it leaves him in a very unenviable position and shows him to be guilty of such reprehensible conduct and of such immoral acts that ought not to be tolerated in a teacher of our children. We have no doubt that the evidence in this record shows sufficient cause under the statute to justify the appellants in annulling the contract with him before he commenced teaching, or if he had been engaged in teaching, in discharging him. Reaching this conclusion upon the facts it is not necessary to notice the minor errors assigned, but for the reason stated, the judgment of the court below will be reversed.

Judgment reversed.