## Western Union Telegraph Company v. Abraham Hart et al.

1. TELEGRAPH COMPANIES—*Failure to Send Dispatches Correctly.*—A telegraph company is liable for damages in failing to transmit messages correctly.

2. SAME—*Duty of the Person Sending the Dispatch.*—When a person discovers that an error has been made in transmitting a message by telegraph it is his duty to use reasonable and diligent efforts to make the loss, if any, on account of the error, as small as possible.

**Trespass on the Case.**—Negligence in transmitting telegraph messages. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

Western Union Telegraph Co. v. Hart.

### STATEMENT OF THE CASE.

On August 26, 1891, Hart Bros., a firm composed of Abraham Hart, Henry M. Hart, Jacob Levy and Nathan J. Schwartz, and engaged in the wholesale men's furnishing goods business in Chicago, Ill., sent to Chas. H. Potter & Co., stock brokers in Cleveland, O., by the line of the defendant company, a telegram reading, "Please advise present price Republic iron stock." The same day Potter & Co. telegraphed to Hart Bros. in reply: "Will give twenty-four for one hundred Republic." This message was delivered to Hart Bros., reading: "Will give thirty-four for one hundred Republic." Hart Bros. thereupon purchased of Messrs. Breeze & Cummings, stock brokers at Chicago, one hundred shares of Republic Iron Company stock, the commodity referred to in the message above set out, paying therefor $27.50 per share, and forwarded the same to their Cleveland representative, one A. Wiener, for delivery to Potter & Co. at $34 a share. Potter & Co. refused to accept the stock, and it was thereupon returned to Hart Bros. on August 27, 1891. The defendant had no notice of the nature of the transactions in question other than that furnished by the telegrams above set out.

On September 1, 1891, Hart Bros. made written claim for loss in respect to the stock mentioned upon the defendant company. At that time no attempt to sell the stock had been made by the plaintiffs. Some desultory attempts to sell were made after September 1, 1891, but no offer of the stock was ever made to Potter & Co. at Cleveland, the largest dealers in this commodity in the country, or Breeze & Cummings at Chicago, and no sale was actually effected until some time in the latter part of October, 1891, shortly after a representative of the defendant had declined to settle the claim upon the ground, with others, that plaintiffs had suffered no loss, as they still held the stock in question. A sale was then made for the purpose of terminating the transaction, and determining what loss, if any, appellees had suffered. The price obtained was $24 a share. Meanwhile, between September 8th and October 26th, the stock of this

company had been sold by Potter & Co. on half a dozen different occasions, at prices ranging from $25 to $26⅞ a share.

The evidence further shows that on August 26, 1891, when Potter & Co.'s offer was received, Hart Bros. were the owners of from six to eight hundred shares of Republic Iron Company stock, and that none of this was used by them to meet Potter & Co.'s offer, the one hundred shares forwarded having been purchased for that express purpose from Chicago stock brokers; also, that Abraham Hart, one of the plaintiffs, was an active dealer in Republic Iron Company stock, and had about one hundred friends who were interested in said company.

Upon the above facts the jury returned a verdict against the defendant for $413.39, from which plaintiffs remitted $63.39, judgment for $350 being entered. A new trial having been denied, and judgment rendered upon the verdict, the defendant now brings the case here on appeal.

WILLIAMS, HOLT & WHEELER, attorneys for appellant.

FLOWER, SMITH & MUSGRAVE, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The message in this case was such that appellant could reasonably have anticipated that appellees would, upon the strength of it, buy the stock mentioned. To inquire what the price of a commodity is, and to be informed before purchase what can be obtained therefor, is a common business transaction.

The case of W. U. Tel. Co. v. Richmond, 16 Am. & Eng. Corptn. Cases 263, is on all fours with the present. In that, upon receiving a message that A. & M. Robbins would give "thirty-three cents for good young turkeys," the plaintiffs bought a large quantity at twenty-five cents per pound. It turned out that the message as sent was twenty-two cents.

The plaintiffs were held entitled to recover the loss actually sustained.

Other authorities to the same effect are W. U. Tel. Co. v. Harris, 17 Ill. App. 347; Postal Tel. Co. v. Lathrop, 131 Ill. 575; U. S. Telegraph Co. v. Wenger, 55 Pa. St. 262.

The price mentioned (thirty-four) in Cleveland, for stock that could be bought in Chicago for $27.50, in view of the fact that the commodity was not listed upon any exchange, nor an article, the value of which was widely or generally known, was not such as to of itself require plaintiffs to make inquiry before they acted. The stock, it would seem, had no regular market or established value. There is nothing tending to impeach the good faith of appellees in purchasing this stock.

As to these matters, we think that the following instructions, given at the instance of the defendant, were all it was entitled to have given:

(4) " The jury are instructed that the plaintiffs, upon discovering an error in the telegram complained of, were bound to use reasonable diligence to dispose of the stock, if any, purchased by them in reliance upon said telegram, to the best advantage, and the plaintiffs can recover herein, if anything, such sum only as represents the difference between the purchase price of said stock, and the highest sum which the jury believe from the evidence might have been realized upon a resale thereof, by reasonably diligent efforts on the part of the plaintiffs.

(5) When the plaintiffs discovered that an error had been made in the telegram in question, it was their duty to use reasonable and diligent effort to make the loss, if any, on account of the error, as small as possible. They were not entitled to hold for speculative purposes any stock which they might have purchased, but were bound to dispose of the same, with reasonable promptness and business prudence, for the highest price they could obtain therefor. If the jury believe from the evidence that the plaintiffs purchased stock on account of the alleged error in the telegram, and held the same either for speculative purposes, or for an

unreasonable length of time, then the defendant is liable, if at all, only for the difference between the price paid by the plaintiffs for said stock, and the highest price at which they could have sold it at any time before the time when they did sell it. Even if they did not hold the stock for speculative purposes, or for an unreasonable time, still no more can be recovered than the difference between the purchase price of the stock and the highest price they could have obtained therefor by reasonably diligent effort.

(6) The defendant, if liable at all in this action, is liable only for such damages as it may reasonably be supposed to have anticipated as the probable result of an error in the message, and not for any damages remotely or indirectly resulting from such error through circumstances not known to or contemplated by the defendant telegraph company when the message was sent.

(7) If the jury believe that the plaintiffs knew or suspected, or in the exercise of reasonable diligence ought to have known or suspected, upon receipt of the telegram mentioned in the declaration, that said telegram was erroneous, it was their duty, before acting upon said telegram, to make responsible inquiry and investigation to ascertain the correctness or incorrectness thereof. In considering whether they so knew or suspected, or ought to have known or suspected, the existence of an error in the telegram, the jury have a right to take into account all the facts shown by the evidence as to the acquaintance, if any, of the plaintiffs with the affairs of the Republic Iron Company and with the prevailing values of the stock at and about the time in question, and the probability or improbability that the sender of the telegram would offer $34 per share for said stock, together with any circumstances shown by the evidence bearing upon that question."

Appellees were bound to use reasonable efforts to save themselves and appellant from loss. The question is not, did they obtain the highest possible price for the stock, but, did they, in good faith, use reasonable effort to do so. We see no reason for thinking that they failed in this respect.

Before selling, appellant was notified, and it might have taken the stock off appellees' hands by paying them what it had cost them. Appellant was in a position to avail itself of all that the utmost effort could effect to save a loss to any one.

We find no error in this record requiring a reversal of the judgment, and it is affirmed.