NANCE McBROOM, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF DISTRICT No. 205 *et al.*, Defendants-Appellees.

Second District   No. 85—0355

Opinion filed June 20, 1986.

Gail E. Mrozowski, of Cornfield & Feldman, of Chicago, for appellant.

Todd Faulkner, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This matter was brought by plaintiff as a complaint for administrative review of the decision of a hearing officer appointed by the State Board of Education to hear charges on the dismissal of plaintiff,

a tenured teacher. The hearing officer upheld the dismissal, and plaintiff sought administrative review in the circuit court of Du Page County. The circuit court affirmed the hearing officer's decision.

Plaintiff, Nance McBroom, was a tenured physical-education teacher employed by the board of education of District No. 205 (board) for approximately 12 years and was chairperson of the girls' physical-education department at York High School during the 1982-83 school term. During her tenure with the district, plaintiff maintained an excellent work record. Plaintiff holds a certificate to teach kindergarten through grade 14 physical education.

District 205, which serves approximately 6,500 students, consists of eight elementary schools, three junior high schools, and one high school. Physical education is taught at all levels by specialized physical-education teachers. The district is composed of several communities: Elmhurst, part of Bensenville, and part of Oakbrook.

During the 1983-84 school year, plaintiff was given a leave of absence by the board. Plaintiff sought reinstatement from her leave status for the 1984-85 school year. The district dismissed plaintiff for theft of a $290 social security check.

Plaintiff testified before the hearing officer that on May 9, 1983, while checking and straightening the girls' locker room, she found an endorsed check for $290 in a wastebasket. She retrieved the check from the wastebasket and placed it in her desk after completing her work in the locker room. The check was payable to a student, Marci Spaulding, and her mother, Beverly Spaulding. Plaintiff knew Kelly Spaulding, Marci's sister, but made no effort to return the check. She took the check from her desk along with another check payable to plaintiff, and according to plaintiff, she went to her bank to cash her check. At the bank, plaintiff informed the teller of her account number and cashed her check. Plaintiff also requested that the teller cash the $290 check. The teller asked plaintiff how the check came into her possession, and she replied that she had found it.

Marci testified that she had left the check in her purse which she hid under clothes in an unlocked locker while she participated in a physical-education class. Immediately upon discovering the loss, Marci notified the bank that the check had been stolen. When it was presented by plaintiff, the bank refused payment and retained possession of the check. Plaintiff was arrested at the high school later that day by an Elmhurst police officer for theft of the check.

Four days after the arrest, the May 13, 1983, edition of the Elmhurst Press carried a front-page article, entitled "Teacher Charged with Check Theft." The article named plaintiff and described the theft

as occurring at school. A week later, on May 20, 1983, the Elmhurst Press again carried a front-page article which reported that felony burglary charges against plaintiff for theft of the check had been dismissed. On September 2, 1983, the Elmhurst Press, under the headline "Warrant Issued for York Coach in Theft," reported that plaintiff had failed to appear to answer misdemeanor theft and deceptive practices charges in the Du Page County circuit court in regard to the theft of the check.

On November 8, 1983, plaintiff pleaded guilty to theft of the check in the circuit court and was sentenced to pay a fine and court supervision. She satisfied the conditions of her supervision and was discharged. At the sentencing hearing, the following stipulated facts were presented to the court: plaintiff's conduct was morally and criminally wrong; she knew what she had done and was capable of bringing her conduct into conformance with the law; and she had been humiliated in front of her peers and in the Elmhurst community as a result of the issue being raised in the newspapers.

On November 11, 1983, the Elmhurst Press reported that on November 8, 1983, plaintiff had been found guilty in the Du Page County circuit court on charges of theft and deceptive practices and was fined and sentenced to court supervision until May 8, 1984. The Elmhurst Press is the only local newspaper in Elmhurst, a city of approximately 44,000 residents. The newspaper has a total circulation of approximately 7,000 copies in Elmhurst. The city of Elmhurst is virtually coterminous with the school district.

The theft and arrest also received considerable notoriety among persons directly connected with the school district. During the months after plaintiff's arrest, approximately 50 students expressed their shock to Marci Spaulding over plaintiff's misconduct. Ronald Chambers, dean of students and director of pupil services at the high school for 14 years, testified that two or three days after the arrest, two girls came into his office to discuss "a problem." The girls related that they had been raised to respect teachers who should serve as examples for students, but that as a result of plaintiff's misconduct, they did not know whether they should believe their parents or teachers anymore. Mr. Chambers also testified about a telephone call he made to a parent to discuss a student-discipline problem. Rather than focusing on the issue of her son's misconduct, the parent talked about plaintiff and how inappropriate it was to have a thief on the school staff. Finally, while performing his daily hall monitoring duties, particularly during student passing periods, following plaintiff's arrest, Mr. Chambers observed that "it seemed like everybody was talking about

*** Ms. McBroom."

Clark Fisher, a life-long resident of Elmhurst with 21 years of employment at the high school as a teacher, coach, dean, and assistant principal, testified to a dozen or so communications concerning plaintiff's misconduct from neighbors and parents of students at the high school. In one such communication a high school student's mother challenged the suspension of her son from school for theft when faculty members were stealing in the building. Similarly, Dr. Russell Thiems, the superintendent of the district, testified to having received between 18 to 25 communications from parents of district students about plaintiff's misconduct. Mr. Cosgrove, an Elmhurst resident and a member and secretary of the board, testified to three different conversations, a year after the theft, with officers or members of the high school's parent-teacher association. They were concerned about the detrimental effect that plaintiff's return to the district would have on the students, particularly in regard to the teaching of discipline and honesty.

Dr. Thiems and Mr. Fisher testified that teachers in the district are expected to follow section 27—12 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 27—12), which provides:

"Honesty, kindness, justice and moral courage. Every public school teacher shall teach the pupils honesty, kindness, justice and moral courage for the purpose of lessening crime and raising the standard of good citizenship."

Dr. Thiems further testified that the board expects the ethical conduct of teachers to be impeccable. These expectations are conveyed to teachers by teacher evaluations and other documents. The primary method in which teachers are expected to comply with section 27—12 is by serving as an effective role model, which is particularly important at the high school where significant student-theft problems have persisted. Dr. Thiems stated that students "do not simply learn through what they are told, but they learn through what they see in the way of behavior, particularly of people whom they respect."

Dr. John Hanni testified that at the time plaintiff was referred to him by the board in June 1983, three months after the incident, he diagnosed her mental condition as suffering from major depression. The doctor further testified that plaintiff's act of attempting to cash the check was a product of a psychological disorder and was an isolated and unique act for plaintiff. Dr. Hanni prescribed certain medications for the psychological disorder and continued to see plaintiff through April 1984. Dr. Hanni stated that at the time of the hearing, plaintiff was recovered from her illness of major depression. However,

he was continuing her medication treatments. It was his opinion that it was highly improbable that plaintiff would repeat the type of activity which occurred on May 9, 1983.

The hearing officer, who affirmed the board's dismissal, found: "Taking into consideration the wide publicity of the theft and notoriety in the community, the hearing officer believes that there has been substantial harm to the school district and that the Teacher has been rendered incapable of fulfilling, in this community, the statutory duty of all teachers to teach the pupils honesty. If she continued to be a teacher in this school district, sanction of her conduct by the school district might also be implied, thereby impairing the ability of other teachers in this school to teach honesty." Plaintiff sought administrative review of the decision of the hearing officer in the circuit court of Du Page County. The court affirmed the decision.

In applying the standard set forth in *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550, the supreme court recognized that a court's standard of review of an administrative agency's determination regarding discharge is a two-step process. The court must first determine whether the agency's finding of guilt is contrary to the manifest weight of the evidence. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105.

There is no question that plaintiff pleaded guilty to theft of the check. The hearing officer, the board, and plaintiff agree that the board's findings that the theft was committed by plaintiff are not contrary to the manifest weight of the evidence. No appeal has been taken from the decision that she committed the theft which is the basis of her dismissal.

A reviewing court must then determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105; accord, *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 746-47.) An administrative tribunal's finding of cause commands respect and will be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105-06.) If an administrative agency's determination is not arbitrary or unreasonable, and does not involve the imposition of discipline unrelated to the needs of service, it will stand even if a court of review considers another sanction more appropriate. *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258.

"Cause" to justify dismissal has been defined as:

"[S]ome substantial shortcoming which renders continuance in employment in some way detrimental to discipline and effectiveness of service; something which the law and sound public opinion recognizes as a good reason for the individual to no longer occupy his position." (*Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 747; see also *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105.) Whether there is just cause must be determined by the facts and circumstances surrounding the conduct of the employee. *Board of Education v. Epstein* (1979), 72 Ill. App. 3d 723, 725.

There are no Illinois cases specifically addressing the question of whether theft by a teacher is a sufficient cause to justify dismissal. Illinois courts and other jurisdictions, however, have recognized that criminal conduct by a teacher or other person holding a position of public trust diminishes their effectiveness and warrants dismissal.

*Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, is closely analogous to the situation here. Payne was arrested for, and pleaded guilty to, possession of marijuana, for which he received a sentence of probation. This arrest was not discovered by school officials until he was arrested a second time for possession of marijuana and a controlled substance. Both incidents came to the attention of Payne's supervisors as a result of a newspaper article. Unlike the present case, neither incident in *Payne* involved students or occurred on the school's premises.

In *Payne*, the court applied factors established by California law to facilitate its determination of whether a teacher's misdemeanor conviction of possession of marijuana was sufficient cause to warrant dismissal. Those factors included: "(1) the likelihood of an adverse effect from the conduct upon students and other teachers, (2) the degree of adverse effect expected, (3) the type of teaching certificate held by the teacher, (4) the probability that the conduct will recur, (5) the proximity in time of the conduct to the commencement of dismissal proceedings, and (6) the presence or absence of any factors in mitigation." *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 747.

With respect to the sufficiency of the evidence to establish cause, the court stated:

"[A] teacher's possession of even a small quantity of marijuana would, once it became a matter of general knowledge, have a major adverse impact upon that teacher's students and fellow teachers." *Chicago Board of Education v. Payne* (1981), 102 Ill.

App. 3d 741, 747.)

The evidence relied on by the court to support this was in substantial part the expert opinion testimony of the Board's assistant superintendent for personnel. The court further stated:

"We are aware of the special position occupied by a teacher in our society. As a consequence of that elevated stature, a teacher's actions are subject to much greater scrutiny than that given to the activities of the average person. We do not doubt that knowledge of a teacher's involvement in illegalities such as possession of marijuana would have a major deleterious effect upon the school system and would greatly impede that individual's ability to adequately fulfill his role as perceived by the Board. This conclusion is especially true where, as here, the teacher holds a certificate to educate children ages 10 to 13 who are, according to testimony in this case, very impressionable. We can only find that general awareness of possession of marijuana by a teacher in Payne's position directly and adversely affects that individual's ability to effectively perform as a teacher." *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 748.

■■ There is substantial evidence in this case to support a finding of cause for dismissal. A teacher's theft of a student's property did, once it became a matter of general knowledge, have a substantial adverse impact on plaintiff's effectiveness as a teacher. We are cognizant of the special position of leadership occupied by a teacher, who serves as a role model and instills the basic values of our society. The high school students whom plaintiff teaches are at an impressionable age. As a consequence, plaintiff's involvement in the theft would have and, as the evidence reveals, did have a major deleterious effect upon the school. Dr. Thiems, who qualified as an expert, testified to the board's perception of the role of a teacher in the school system and stated that plaintiff's credibility and effectiveness in teaching students honesty and ethical values was substantially impaired as a result of her misconduct and notoriety in the community. This was supported by the statements of students, parents and administrators.

Plaintiff holds a physical-education certificate to teach kindergarten through grade 14 and was chairperson of the girl's physical-education department. This leadership position plaintiff had attained only magnifies future difficulty. Furthermore, evidence was introduced that theft is a significant problem at the high school. Plaintiff's theft of a student's property on school grounds would hinder her ability to enlighten students as to proper behavior in our society.

While the psychiatrist testified that the possibility of a recurrence is slight, this factor does not, in our opinion, outweigh the substantial damage to the students and the school. Plaintiff did not present any evidence in rebuttal to the board's evidence that she could no longer teach honesty or serve as an effective role model. We must conclude that plaintiff's criminal conduct and other aggravating factors constitute sufficient cause to warrant discharge.

Other cases have reached similar results. In *Scott v. Board of Education* (1959), 20 Ill. App. 2d 292, a tenured teacher was dismissed for two arrests for public intoxication despite the fact that she was an excellent teacher and lack of discipline and respect had not been observed among her students. The court found the incidents were publicly known and further held: "It is the opinion of this court that a teacher is something of a leader to pupils of tender age, resulting in admiration and emulation, and that the Board might properly fear the effect of social conduct in public, not in keeping with the dignity and leadership they desired from teachers." (20 Ill. App. 2d 292, 296.) In *Tingley v. Vaughn* (1885), 17 Ill. App. 347, 351, the court stated, in upholding the dismissal of a teacher arrested for attempted rape, "[i]f suspicion of vice or immorality be once entertained against a teacher, his influence for good is gone. The parents become distrustful, the pupils contemptuous and the school discipline essential to success is at an end." In *Lesley v. Oxford Area School District* (1980), 54 Pa. Commw. 120, 420 A.2d 764, the court rejected a teacher's defense that the shoplifting, for which she was dismissed, was the result of a temporary mental instability brought on by physical and emotional stress. The court stated:

> "The circumstances described are mitigating but they cannot 'eradicate the result or change the complexion of her acts.' [Citation.] The School Board to whom the matter of dismissal, or not, is committed had these circumstances before it and doubtless believed, nevertheless, that the result and complexion of [the teacher's] act of shoplifting were such that her effectiveness as a teacher *** was ended." 54 Pa. Commw. 120, 124, 420 A.2d 764, 766.

Plaintiff argues that theft of a student's $290 check cannot be cause for dismissal where her misconduct was caused by a severe psychiatric disorder. Specifically, she contends her misconduct was an isolated incident resulting from her severe grief reaction and depression. Plaintiff relies on *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, and *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, for the proposition that where conduct

is the result of a severe psychiatric or physical condition the conduct cannot be found to be cause for dismissal. We find plaintiff's case distinguishable from the unusual situations presented in *Walsh* and *Kloss.*

In *Walsh,* there is no question that the court found that there were grounds for the plaintiff's discharge because of his criminal conduct. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 108.) However, the primary reason the court remanded the case for further hearing was because Walsh was on a disability pension for mental illness when he committed the criminal conduct. Thus, if Walsh were discharged he would have lost his disability pension. The court believed that this result would be unjust and inequitable. (96 Ill. 2d 101, 108.) There was a strong possibility that the conduct was a result of the mental illness for which he was already placed on disability leave. Therefore, the court remanded the cause for submission of further evidence relevant to whether plaintiff's misconduct was the result of the psychiatric problems that led to his prior medical suspension. 96 Ill. 2d 101, 108.

In *Kloss,* the police officers who responded to the incident considered plaintiff's demeanor so irrational that they did not arrest him but instead took him to a hospital. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258.) Like *Walsh,* the supreme court also found that there was cause to discharge the plaintiff. (96 Ill. 2d 252, 259.) The unusual circumstances presented in that case, however, raised the strong possibility that plaintiff's isolated irrational behavior stemmed from an inadvertently induced adverse reaction to his medication. In view of this, it was unreasonable for the board to discharge him without availing itself of an examination in greater detail of the medically related aspects of the basis for plaintiff's discharge. 96 Ill. 2d 252, 259.

In this case, it is clear that the hearing officer had ample evidence to examine plaintiff's related behavior in relation to her discharge. There is no indication of any aberration or irrational behavior. Nor is there any evidence that plaintiff was errant in her professional duties. She was not on disability leave during the time of the incident nor was she taking any medication. In fact, she did not seek medical attention for her depression until three months after the theft occurred.

Moreover, evidence was presented that plaintiff's conduct was not substantially related to her depression. When plaintiff entered her plea of guilty, she testified before the trial court that at the time she committed the theft she knew her conduct was wrong, she knew what she had done, and she was capable of bringing her conduct into con-

formance with the law. The hearing officer found, based on the evidence, that plaintiff's misconduct was not the substantial result of her psychological problems.

■ Plaintiff finally attacks the decisions of the hearing officer and the trial court on the ground that her misconduct was remediable and therefore the board was required to give her notice.

Where conduct which forms the basis of charges seeking dismissal is deemed remediable, the board must give the teacher a written warning which informs him of the consequences of failing to take corrective measures. (Ill. Rev. Stat. 1983, ch. 122, par. 34—85.) Where no warning is given, the board's evidence must prove that the teacher's conduct is irremediable. If the board fails to meet this evidentiary burden, it is deprived of jurisdiction to terminate a teacher's employment. (*Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 749.) The question of remediability is for the board in the first instance, and its decision will not be overturned absent a showing that it is arbitrary and capricious. 102 Ill. App. 3d 741, 749.

A determination of whether conduct is irremediable requires a two-prong analysis: whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her. *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153; *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 331-32.

With respect to the first prong of the remediability test, it is clear that plaintiff's conduct had immediate adverse effect on the students, faculty, and school. This is amply supported by the testimony of Dr. Thiems, Mr. Fisher, Mr. Cosgrove, Mr. Chambers, and Marci Spaulding. Such conduct as that exhibited by plaintiff is not only harmful to the individual student-teacher relationship, but is equally harmful to the reputation of the faculty and the school.

With respect to the second prong of the remediability test, we believe it is not an appropriate test to apply to situations involving the criminal conduct of a teacher. It could always be argued that if plaintiff had been told not to steal a student's check, she would have refrained from doing so. "If it took only a promise never to engage in the improper conduct again, it is clear that it would be very difficult, if not impossible, to satisfy the second prong of the remediability test." *Board of Education v. State Board of Education* (1985), 138 Ill. App. 3d 947, 952-53.

In our view, remediable conduct is misconduct by a teacher, in her ordinary course of duties, which, if called to her attention, can ordinarily be remedied. Thus, such conduct has been applied to a variety

of fact situations in which the complained of conduct has concerned either deficiencies in teaching performance (see, *e.g., Grissom v. Board of Education* (1979), 75 Ill. 2d 314) or corporal punishment (see, *e.g., Gilliland v. Board of Education* (1977), 67 Ill. 2d 143).

■ We hold the concept was not intended to apply to criminal conduct which has no legitimate basis in our society. Teachers, as leaders and role models, with their education and background, have the duty to implant basic societal values and qualities of good citizenship in their students. To claim that such conduct was remediable distorts the thrust and purpose of the rule. Criminal activity of this nature is conduct which cannot be remedied by a warning. We conclude, therefore, that the conduct here is irremediable.

We have reviewed plaintiff's other contentions and find, without further discussion, that they have no merit.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.