WILLIAM J. McCULLOUGH, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION, by Peter Feuille, Hearing Officer, *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0481

Opinion filed November 7, 1990.

· David T. Lumerman and Stanford L. Sipple, both of St. Louis, Missouri, for appellant.

John F. Borden, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellees Lawrenceville Unit School District No. 20, Richard Alsman, Donald Diggs, Jr., Robert K. Gosnell, Julie Ivers, Gerald Baker, James Seitzinger, and William Cummins.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, William J. McCullough, appeals from a judgment of the circuit court of Lawrence County which upheld, on administrative review, his dismissal as a tenured public school teacher for the Lawrenceville Unit School District No. 20. Plaintiff raises three issues for our review: (1) whether plaintiff's conviction for failure to file Federal income tax returns, together with his post-indictment conduct, constituted cause for dismissal under the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 1—1 *et seq.*), (2) whether certain factual findings

made by the hearing officer were against the manifest weight of the evidence, and (3) whether the hearing officer erred in concluding that the cause for plaintiff's dismissal was irremediable. For the reasons which follow, we affirm.

Plaintiff had been employed by the Board of Education of Lawrenceville Unit School District No. 20 (Board) since 1969. Plaintiff was certified to teach grades 6 through 12 and to administer kindergarten through grade 12. Plaintiff's employment in the school district was divided between teaching social studies and science at the upper grade-school level and serving as principal of the St. Francisville grade school. During the 1986-87 school year, his last year with the district, plaintiff taught at the Brookside grade school.

Between 1980 and 1982, plaintiff made substantial profits from commodities trading, but did not file Federal income tax returns for those years. In 1983, the Internal Revenue Service (IRS) began an investigation of plaintiff, and in May 1983, served a summons on the school district for the disclosure of plaintiff's financial and employment records. In 1986, a grand jury of the United States District Court for the Southern District of Illinois indicted plaintiff on three felony counts of tax evasion (26 U.S.C. §7201 (1986)), and three misdemeanor counts of failure to file tax returns (26 U.S.C. §7203 (1986)), for the years 1980, 1981, and 1982.

On the date of the indictment, the United States District Court issued a warrant for plaintiff's arrest and the clerk telephoned plaintiff and told him that he was required to appear at his arraignment set for April 8, 1986. Plaintiff did not appear for arraignment, instead sending notice to the court that it had no jurisdiction of the subject matter or of him personally. Additionally, plaintiff sent to the court documents attempting to renounce his United States citizenship, claiming that the existing United States government and its IRS was a foreign, illegitimate and *de facto* government.

Upon plaintiff's failure to appear for his arraignment on April 8, 1986, the United States District Court ordered him arrested. When plaintiff refused to submit voluntarily, United States marshals were forced to place him in shackles and take him into custody.

On April 10, 1986, plaintiff entered a plea of not guilty and was released on bond. On April 24 and May 1, 1986, plaintiff appeared in United States District Court and stated that he did not understand the charges against him. On May 1, 1986, following a hearing on the Federal government's motion requesting a competency hearing on plaintiff, he was sent to the Federal Bureau of Prisons' mental facility in Springfield, Missouri, for psychiatric examination and a determina-

tion of his competency to stand trial. The court ordered that the examination be completed within 45 days. However, as a result of plaintiff's refusal to cooperate, on June 10, 1986, the Federal government was forced to make a motion for an additional 30 days in which to complete the psychiatric examination. On August 5, 1986, the court, relying upon the psychiatric report submitted by the medical center in Springfield, Missouri, found plaintiff mentally competent to stand trial.

Plaintiff appeared in United States District Court on January 30, 1987, for the purpose of entering a plea agreement that his counsel had negotiated with the Federal government. However, at this hearing, plaintiff refused to be sworn and intimated that he would not attend his trial scheduled for March 2, 1987. Plaintiff also became passively resistant by refusing to leave the courtroom voluntarily. As a result, the court directed United States marshals to remove plaintiff from the courtroom and place him in custody. Plaintiff was taken to the Williamson County jail, where he engaged in a hunger strike for some period of time.

On February 12, 1987, plaintiff was released from custody and transferred to the psychiatric unit at the Richland County Memorial Hospital in Olney, where he was treated on an in-patient basis by Dr. David Siddens, a clinical psychologist. In an April 12, 1987, letter to Judge James Foreman of the United States District Court, plaintiff apologized for his behavior and disavowed the documents he filed with the court on April 8, 1986. Plaintiff was released from the hospital on April 27, 1987, and continued to be treated on an out-patient basis by Dr. Siddens.

On April 29, 1987, plaintiff pled guilty to three misdemeanor counts of failure to file income tax returns for the years 1980, 1981, and 1982. In return, the Federal government agreed to dismiss the three felony counts of income tax evasion. As a result of plaintiff's guilty plea, the court imposed a sentence that included the following: (1) five years' probation, (2) the immediate payment of $100,000 to be applied to taxes due, (3) the payment of $25,000 in six months if the IRS determination of amounts due had not been made, (4) payment of all taxes due, plus penalties and interest, as determined by the IRS, (5) continued professional counseling, and (6) a prohibition on plaintiff's engaging in the teaching profession during his five-year term of probation. Plaintiff could petition the court for eligibility to return to the teaching profession prior to the next school year and, indeed, in August 1987, the court removed this condition of plaintiff's probation.

Several local and area newspapers as well as area radio and tele-

vision stations had reported on the progress of the court proceedings and plaintiff's unusual behavior from the date of the indictment. After plaintiff pled guilty, news of his actions, conviction and sentence was also publicized throughout the school district and the surrounding community.

Pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), which governs the removal or dismissal of teachers in contractual continued service, the Board approved a motion on May 20, 1987, effective June 19, 1987, dismissing plaintiff for incompetency, negligence, immorality and other sufficient cause. (See Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4.) Plaintiff requested a hearing, which was conducted on August 26-28, 1987, before Peter Feuille, a hearing officer selected by the parties and appointed by the Illinois State Board of Education pursuant to section 24—12. After both sides had submitted briefs, the hearing officer, on November 3, 1987, issued his "Findings of Facts and Decisions," which sustained the Board's dismissal of plaintiff. Although the hearing officer concluded that the Board had failed to establish the charge of negligence, he found that "an ample preponderance of the evidence supports the teacher's dismissal for reasons of incompetency, immorality, other sufficient cause, and [the] best interests of the school." The hearing officer further found that the offending conduct was not caused by a temporary mental illness or distress and was not remediable.

██ Under section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—110), the findings and conclusions of an administrative hearing officer on questions of fact are considered to be *prima facie* true and correct. Only if the findings are against the manifest weight of the evidence can they be set aside. (*Massie v. East St. Louis School District No. 189* (1990), 203 Ill. App. 3d 965, 971; *Board of Education v. Box* (1989), 191 Ill. App. 3d 31, 37, 547 N.E.2d 627, 630.) The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently does not justify reversal of the administrative findings and decision. (*Fadler v. Illinois State Board of Education* (1987), 153 Ill. App. 3d 1024, 1026, 506 N.E.2d 640, 642.) Plaintiff first takes issue not with the findings themselves, but with their legal effect, *i.e.*, whether these findings constituted cause for dismissal.

██ No tenured school teacher may be removed from employment except for cause. (See Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4; *Fadler*, 153 Ill. App. 3d at 1026, 506 N.E.2d at 642.) "Cause" to justify dismissal has been defined as: "some substantial shortcoming which renders continuance in employment detrimental to discipline

and effectiveness of service; something which the law and sound public opinion recognize as a good reason for the teacher to no longer occupy his position." (153 Ill. App. 3d at 1026-27, 506 N.E.2d at 642-42; see also *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 747, 430 N.E.2d 310, 314-15.) Although no Illinois case specifically addresses whether a teacher's failure to file income tax returns is sufficient cause to justify dismissal, Illinois courts have recognized that criminal conduct by a teacher diminishes his effectiveness and warrants dismissal.

In *Payne*, a case closely analogous to the case at bar, a teacher was arrested for, and pled guilty to, possession of marijuana for which he received a sentence of probation. This information came to the attention of school officials as a result of a newspaper article published upon a second arrest of the teacher for possession of marijuana and a controlled substance. As in the present case, the criminal conduct in *Payne* did not involve students or occur on the school's premises. With respect to the sufficiency of the evidence to establish cause for dismissal, the court in *Payne* stated:

> "[A] teacher's actions are subject to much greater scrutiny than that given to the activities of the average person. We do not doubt that knowledge of a teacher's involvement in illegalities such as possession of marijuana would have a major deleterious effect upon the school system and would greatly impede that individual's ability to adequately fulfill his role as perceived by the Board." 102 Ill. App. 3d at 748, 430 N.E.2d at 315.

Other cases have reached similar results. In *Scott v. Board of Education* (1959), 20 Ill. App. 2d 292, 156 N.E.2d 1, a teacher's dismissal for two public intoxication arrests was upheld where the court found the incidents were publicly known and not in keeping with the dignity and leadership the board desired from teachers. In *McBroom v. Board of Education of District No. 205* (1986), 144 Ill. App. 3d 463, 494 N.E.2d 1191, the court upheld a teacher's dismissal for the theft of a student's $290 check, finding that her credibility and effectiveness in teaching students honesty and ethical values was substantially impaired as a result of her misconduct and notoriety in the community.

In the case at bar, Board witnesses testified that teachers, administrators, parents and school children had lost respect for plaintiff, and that the publicity surrounding his criminal case and his behavior during its pendency had harmed the school's reputation. Thus, the record supports the hearing officer's finding that

"the Teacher's totality of conduct, including his criminal conviction for failure to file income tax returns and his post-indictment behavior connected with this tax case, have sufficiently harmed the Teacher's reputation and credibility, and have sufficiently damaged the respect and esteem in which the Teacher is held by his coworkers and other members of the school community, that he has had an adverse effect on the school and thus he can no longer serve as an effective Teacher in this District. In particular, he can [no] longer serve as an effective or credible role model for students, especially for instilling such desirable societal values as honesty and patriotism."

Following the court's reasoning in *Payne, Scott,* and *McBroom,* we conclude that plaintiff's criminal conduct and its surrounding circumstances constitute sufficient cause to warrant dismissal.

■ Plaintiff next argues that his post-indictment conduct cannot be cause for dismissal where it resulted from a severe psychiatric condition. Section 10—22.4 of the School Code, on which plaintiff relies, creates an exception to the Board's authority to dismiss a teacher, stating: "Temporary mental or physical incapacity to perform teaching duties, as found by a medical examination, is not a cause for dismissal." (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4.) However, where plaintiff did not meet his burden of proof to establish a temporary mental incapacity or to show that he was dismissed because of that incapacity, the exception does not apply. See *deOliveira v. State Board of Education* (1987), 158 Ill. App. 3d 111, 122, 511 N.E.2d 172, 180.

Section 10—22.4 requires that any temporary mental incapacity be found and determined by a medical examination. (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4.) Plaintiff fails to establish his temporary mental incapacity under the statute in that he submitted no report or testimony by a psychiatrist or other medical doctor to document his condition. Plaintiff's treating psychologist, Dr. Siddens, did testify that plaintiff had suffered from a mental illness, which he described as "[a] personality disturbance with depressive and obsessive compulsive features," which began in early adolescence. However, as defendant suggests, Dr. Siddens never claimed to have had any medical training or degree.

■ However, even if Dr. Siddens' diagnosis were acceptable under the statute, plaintiff has failed to establish that his condition made him incapable of performing his teaching duties or that he was dismissed because of that incapacity. Both Dr. Siddens and plaintiff himself testified that his condition allowed him to function normally at

school. Furthermore, the Board did not dismiss plaintiff for his mental condition but for his incompetency, immorality, other sufficient cause and the best interests of the school. Plaintiff does not claim that his mental condition excused his criminal conduct and, indeed, Dr. Siddens testified that although plaintiff was mentally disturbed, he was nevertheless accountable for failing to file tax returns. Thus, we agree with the hearing officer's finding that the "conduct which resulted in the Teacher's dismissal was not caused by a temporary mental illness or distress."

Plaintiff's third and final contention is that the hearing officer erred in concluding that his conduct was not remediable. This finding was significant because if conduct is remediable, the teacher is entitled to a written warning before being dismissed. Without such a warning, the Board is deprived of jurisdiction to terminate a teacher's employment for the causes given. On the other hand, if the teacher's conduct is irremediable, no written warning is required before dismissal action is initiated. *Fadler*, 153 Ill. App. 3d at 1028, 506 N.E.2d at 643.

■ The test for determining whether conduct is irremediable as established in *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326, is (1) whether damage has been done to the students, faculty or school, and (2) whether the conduct resulting in that damage could have been corrected had the teacher been warned. With respect to the first of these elements, there can be little doubt under the circumstances present here that the Board and the hearing officer could have concluded that plaintiff's conduct was detrimental not only to his relationship with the students, but also to the reputation of and faith in the faculty and school as a whole. As this court recently stated in *Massie*, affirming a teacher's dismissal for transporting two students to his home unchaperoned and permitting them to drink intoxicating beverages:

> "In our society, public school teachers hold a special position of trust and moral leadership. Indeed, by statute they are obligated to inculcate their pupils with the virtues of 'honesty, kindness, justice and moral courage for the purpose of lessening crime and raising the standards of good citizenship.' (Ill. Rev. Stat. 1987, ch. 122, par. 27—12.) To do what plaintiff did here is completely contrary to these principles." *Massie*, 203 Ill. App. 3d at 957.

Plaintiff contends that his dismissal was nevertheless improper because the Board failed to establish that the conduct resulting in the

damage could not have been corrected had plaintiff been warned. Specifically, plaintiff argues that the Board should have warned plaintiff to "clear up the situation quietly or else risk his job" when it first became aware of the IRS investigation into plaintiff's financial affairs in 1983. This contention is wholly untenable.

First, the Board did not know of any misconduct by plaintiff in 1983. It knew only that the IRS was requesting information and could not assume that plaintiff was guilty of a crime. Second, regardless of whether the conduct was remediable in 1983, it was certainly not remediable after plaintiff was convicted and the conviction and plaintiff's attendant conduct were well publicized.

██ It has been held that the second prong of the remediability test is inapplicable to situations involving the criminal conduct of a teacher. (*McBroom*, 144 Ill. App. 3d at 473, 494 N.E.2d at 1198.) We are not dealing here with simple deficiencies in teaching or differences in methods of punishment. Plaintiff's conduct has no legitimate basis in our society, and to claim that it was remediable distorts the thrust and purpose of the rule. (See *McBroom*, 144 Ill. App. 3d at 474, 494 N.E.2d at 1198.) Where plaintiff can no longer function as a role model to impart basic societal values and qualities of good citizenship to his students, his conduct is irremediable.

For the foregoing reasons, we hold that the circuit court was correct in sustaining the hearing officer's order of dismissal of plaintiff as a teacher in Lawrenceville Unit School District No. 20. Accordingly, the judgment of the circuit court of Lawrence County is affirmed.

Affirmed.

RARICK and HOWERTON, JJ., concur.