SANDOR SZABO, Plaintiff-Appellee and Cross-Appellant, *v.* THE BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT 54, COOK COUNTY, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)   No. 82—2729

Opinion filed September 2, 1983.

Wesley A. Wildman, John A. Relias, and Andrea R. Waintroob, all of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellants.

Peter M. Katsaros and Wayne Schwartzman, both of Hirsh & Schwartzman, of Chicago, for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Sandor Szabo, a tenured physical education teacher assigned to the MacArthur Elementary School, was dismissed from his position by the Board of Education of School District 54, Schaumburg, Illinois (Board). The Illinois State Board of Education upheld plaintiff's discharge on the ground that in 1979 and 1980 Szabo misused the school district's sick leave and business leave policies. On administrative review (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*), the trial court reversed and ruled that plaintiff's conduct was remediable and that he should not have been discharged. The case was remanded to the Board to impose an alternative penalty.

The Board appeals the trial court's decision that plaintiff's conduct was remediable, that discharge was too harsh a penalty and that the cause should be remanded. Plaintiff alleges in his cross-appeal that he did not misuse leave policies and that the Board need not impose a lesser penalty. For the reasons that follow, we affirm in part

and reverse in part.

From 1969 until November 1980, Szabo taught health and physical education at MacArthur Elementary School. During the last two years of his employment his teaching duties were performed between 8:15 a.m. and 3:30 p.m. He also held a part-time job in the late afternoon as a soccer coach at Harper Community College (Harper). Soccer was a varsity sport at Harper with regularly scheduled games against other teams. In addition to his coaching duties, Szabo was responsible for establishing the team's soccer match schedule. He decided which colleges would be placed on the schedule, the times that the games would be played and the bus schedules. Szabo received $1,062 for each season that he coached.

In 1979, Harper College participated in five soccer matches, four of which Szabo allegedly either took a personal business day or sick day to attend. On November 9, the team made the midwest regional playoffs and a game was scheduled. Departure time from the college was 11 a.m. Since November 9 was a Friday, Szabo had to give a reason for seeking personal leave. (No reasons were required for personal leave on Tuesday through Thursday.) On November 6, Szabo submitted a written request for personal business leave for November 9. He stated that he would be absent because he had a court appearance in the morning and a tournament in the afternoon. The assistant superintendent of personnel, Ronald Ruble, and the school principal, Roy Johnson, informed Szabo that one-half day of personal business leave would be allowed for the court hearing but that Szabo would be docked a half day's salary for his attendance at the soccer tournament. For the 1979 school year, Szabo was absent from his teaching duties at the elementary school five times. Each day of absence corresponded to a day that the Harper College team participated in a soccer competition that was not played on its campus.

During the 1980 school year, Szabo was absent seven times. Again, the absences corresponded to the days that the soccer team played an away game. Szabo either called in sick or took these absences as personal business days and as a result, his salary was never docked. The only date for which Szabo had taken time off at a salary deduction was, as previously stated, November 9, 1979.

School principal Roy Johnson reported Szabo's absences to the administrator of personnel relations, Curtis Casey. Casey compared Szabo's absences during 1979 and 1980 with the Harper soccer team schedule and discovered that with the exception of one occasion, Szabo had never been present at the elementary school on an afternoon when Harper played an away game. Casey notified the Board

and based on his report, it voted to discharge Szabo. Subsequently a hearing was held before a hearing officer of the State board of education. Although unable to dispute the unfailing correlation of his sick and personal leave days to Harper College's away game schedule, Szabo maintained that he had not abused the school district's leave policy and that on each of the days in question he either had legitimate personal business or had been too ill to teach but not too ill to coach soccer. He denied that he had taken the afternoons off in order to arrive at Harper College earlier than his normal quitting time at the elementary school of 3:15 p.m. would have permitted. Szabo alleged that although he had scheduled the departure times for the games, the team buses never left before 3:30, which is when he said he would have arrived at Harper had he worked a full school day.

The hearing officer did not find Szabo's explanations to be credible and concluded, as had the Board, that Szabo had wilfully abused the school district's personal and sick leave policies in order to avoid pay deductions for time spent coaching soccer. The hearing officer upheld the Board's determination that Szabo's conduct was an irremediable cause for discharge and explained that Szabo's conduct had deprived his students of his services, that he had taken the school district's money under false pretenses and that he had committed a breach of trust which reflected badly on the other faculty members and on the school system. The officer ruled that since Szabo's offense involved cheating and dishonesty, no notice of remediation was required.

Szabo filed a complaint in the circuit court of Cook County alleging that the hearing officer's decision was contrary to the manifest weight of the evidence. The court ruled that although it was apparent that Szabo had lied about the reasons for his absences, his conduct was remediable. The case was remanded to the Board with instructions to impose a penalty other than discharge. This appeal followed. Plaintiff cross-appealed the court's ruling that he misused leave policies and that a lesser penalty should be imposed.

OPINION

The controlling issue for our consideration is whether sufficient cause for plaintiff's dismissal is shown by the record to be irremediable. The determination of whether causes for dismissal are remediable or irremediable is a question of fact which initially lies within the discretion of the Board. A reviewing court will not interfere with the Board's decision unless the Board has acted in an arbitrary or capricious manner or the reasons formulated for the dismissal were against

the manifest weight of the evidence. *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322; *Lowe v. Board of Education* (1979), 76 Ill. App. 3d 348, 355-56, 395 N.E.2d 59.

We note at the outset that in order to encourage teachers to work within the educational system and to assure teachers of experience and ability that rehiring will be based upon merit rather than upon reasons that are political, partisan or capricious, the School Code provides that a tenured teacher may only be discharged for cause. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12; *Morris v. Board of Education* (1981), 96 Ill. App. 3d 405, 410-11, 421 N.E.2d 387.) In furtherance of the goal of protecting tenured teachers, the School Code provides that:

> "Before setting a hearing on charges stemming from causes that are considered remedial, a board must give the teacher reasonable warning *in writing*, stating specifically the causes which, if not removed, may result in charges." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 122, par. 24—12.

If charges against a teacher are remediable but the teacher is *not* given proper notice in writing, the failure to provide the warnings required by the School Code deprives the Board of jurisdiction. *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 442-43, 367 N.E.2d 1337.

■ A written warning is *not* required when the teacher's conduct is irremediable, however. The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in the damage could have been corrected had the teacher's superiors warned her. (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322.) Where causes which are remediable in nature continue for a long enough period of time and where the teacher refuses or fails to remedy them, they may be considered to be irremediable. *McCutcheon v. Board of Education* (1981), 94 Ill. App. 3d 993, 998, 419 N.E.2d 451.

■ In our opinion, the manifest weight of the evidence reveals that because Szabo's pattern of improperly taking days off with pay could have been rectified upon proper notice, his conduct was remediable. Although he was informed of the applicable leave policy by the principal, Roy Johnson, and the assistant superintendent of personnel, Ronald Ruble, these conversations occurred before either administrator was aware that a violation had transpired. Similarly, Johnson's remarks to Szabo that he must adhere to the proper channels to take time off to coach was not given in a context which indicated that he

was aware of a repeated violation. Szabo was, therefore, never admonished to correct his conduct. Arguably, Szabo was put on notice that a salary deduction was the only acceptable means to account for the time he took for his coaching responsibilities; however, a written warning stating the consequences of Szabo's absenteeism and failure to adhere to Board policy should have been issued. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) There is nothing in the record to suggest that Szabo would not have corrected his *modus operandi* of taking sick leave and personal business days to coach had he been forewarned. The evidence presented therefore falls short of sustaining a charge of irremediability. The absence of a warning is fatal to the Board's appeal, for, as previously explained, it deprives the Board of jurisdiction of this matter. *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 442-43, 367 N.E.2d 1337.

As to the second cause of dismissal, we again find no evidence in the record of any detrimental consequences suffered by the students, school or faculty as the result of Szabo's conduct. The Board has failed in this regard as well to justify not giving the required statutory warning. Moreover, we are unpersuaded by the cases cited by the Board on this issue as those cases are distinguishable from the facts before us. The teacher in *Christopherson v. Spring Valley Elementary School District* (1980), 90 Ill. App. 3d 460, 462, 413 N.E.2d 199, stated in advance that she would disregard the board's denial of her request for a five-day business leave to attend an education convention. Accordingly, the court held that the teacher's wilful violation could not be remedied. (90 Ill. App. 3d 460, 462.) In *Yuen v. Board of Education* (1966), 77 Ill. App. 2d 353, 222 N.E.2d 570, the court upheld the board's discharge of a teacher who, after having expressly been denied a request for absence, was found to have intentionally and wilfully violated the board's ruling by leaving work and attending a teacher seminar. As in *Christopherson*, the court ruled that once the wilful violation had occurred, the damage was done and could not be remedied. 77 Ill. App. 2d 353.

Clearly, the distinguishing factor in each of the above cited cases is that the teacher's conduct could not have been corrected even if a written warning had been given. In each case the teacher announced in no uncertain terms his and her intention to defy the board's denial of a request for leave. Such is not the case here. Szabo did not exhibit hostile defiance of his employer and did not erode the disciplinary authority of the Board. We therefore hold that defendants were not irremediably harmed and that the Board's decision was against the manifest weight of the evidence.

We are compelled to next address the question of Szabo's alleged cheating the school district of money by taking leave with pay under false pretenses. In this regard, the hearing officer noted that to classify Szabo's conduct as theft would be overly harsh:

> "Where outright theft of school property is concerned, the thief would probably find it impossible to justify his action either to himself or to others. Where sick leave or personal leave is concerned, some teachers begin to think in terms of 'Those days are coming to me. They are mine.' and it becomes very easy to justify to one's self that there is nothing wrong with taking the day off even though one is not sick or engaged in an activity covered by the business leave provision. This is, of course, wrong, and may well constitute taking money under false pretenses, but the same social stigma does not commonly apply, although logically perhaps it should."

The trial court also noted that the abuse of leave policies" *** is not unusual under the maladies of our system. The lack of scrupulousness in the serving of one's employer is pervasive ***."

■ These observations raise the question of whether a teacher's use of his sick or personal business days to engage in part-time employment is, *ipso facto*, an irremediable act. We are of the opinion that in order to justify a dismissal for that reason alone, the Board must clearly articulate the restrictions placed on this privilege. In the case at bar, plaintiff was never expressly informed of any such restrictions, he was not instructed to refrain from working part-time nor was he warned in writing that to use his sick and business leave days to coach would result in his termination. In the absence of such warnings, we hold that plaintiff's conduct was not an irremediable cause for dismissal.[1]

■ Finally, we note that plaintiff and defendants agree that the school code has, in effect, an all or nothing policy which does not permit a lesser disciplinary penalty other than discharge in cases which have been adjudicated by the trial or appellate court. The pertinent portion of the code provides that "[i]f a decision of the hearing officer is adjudicated upon review or appeal *in favor of the teacher*, then the

---

[1] We note that the record includes copies of pamphlets entitled "Agreement between the Schaumburg Education Association and the Board of Education" for 1979-80 and 1980-81. Under a section entitled "Business Leave," the agreement explains the procedure to be used to request time off and lists 10 common uses for business leave. These include religious holidays, legal hearings and weddings. *Restrictions* on the use of business leave or sick leave days are not addressed, however.

trial court shall order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein. Any teacher who is reinstated *** shall be assigned by the board to a position substantially similar to the one which that teacher held prior to that teacher's suspension or dismissal." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 122, par. 24—12.

The language cited above indicates that a reviewing court is empowered to make only one of two decisions: to reinstate the teacher with no loss in pay or, to uphold the order of dismissal with no award of back pay. There is no language in the statute which suggests that a disciplinary penalty other than discharge is available. Accordingly, we find that the trial court erred in remanding this case to the Board.

For the reasons indicated, the trial court's order reversing the Board's order of dismissal is affirmed; the order remanding the case to the Board is reversed. The case is remanded to the circuit court to proceed in a manner consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

LORENZ and MEJDA, JJ., concur.