CHARLES MASSIE, Plaintiff-Appellant, v. EAST ST. LOUIS SCHOOL DISTRICT NO. 189 *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0761

Opinion filed September 19, 1990.

Harry J. Sterling, of Sterling & Kelley, P.C., of Fairview Heights, for appellant.

Edward L. Welch, of Welch & Bush, P.C., of East St. Louis, for appellee East St. Louis School District No. 189.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Charles Massie, appeals from a judgment of the circuit court of St. Clair County which upheld, on administrative review, his dismissal as a tenured public school teacher for the Board of Education of East St. Louis School District No. 189. Three issues are presented for our review: (1) whether the procedures followed in securing plaintiff's dismissal met the requirements of due process, (2) whether certain factual findings made by the administrative hearing officer were against the manifest weight of the evidence, and (3) whether the administrative hearing officer erred in concluding that the cause for plaintiff's dismissal was irremediable. For the reasons which follow, we affirm.

The record before us established that plaintiff was employed by the Board of Education of East St. Louis School District No. 189 as a high school teacher. Plaintiff had worked for the Board for many years and entered upon "contractual continued service" pursuant to section 24—11 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—11), i.e., he was tenured. Pursuant to section 24—12 of the School

Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), which governs the removal or dismissal of teachers in contractual continued service, the Board approved a motion on January 4, 1988, to dismiss plaintiff from his employment "for cause." See Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4.

Various charges were specified in the Board's motion. Among these were that:

"On a Saturday, November 21, 1987, in the late afternoon or early evening hours [plaintiff] did transport two female students of the East St. Louis Senior High School to his place of residence in Fairview Heights, St. Clair County, Illinois, where said students were permitted to drink large quantities of various intoxicating liquors to the extent that one of them became intoxicated."

As required by section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), the Board served written notice of the charges upon defendant within five days of the adoption of its motion and appended to the written notice a bill of particulars. Plaintiff, by his attorney, then made a written request to the Board for a hearing on the charges before a disinterested hearing officer. The Board, in turn, forwarded a copy of plaintiff's request to the Illinois State Board of Education in accordance with the provisions of section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12). Plaintiff and the Board selected a hearing officer from a list provided by the State Board, and the hearing officer, Howard Z. Gopman, accepted the appointment.

A hearing before Gopman was conducted on April 21 and 22, 1988. Nineteen witnesses were called to testify. These included plaintiff, his son, his wife, various students and former students from East St. Louis High School, parents of students, teachers, and the principal of East St. Louis High. Following the hearing, the parties submitted memoranda of law, and on December 16, 1988, the hearing officer rendered his decision. In that decision, the hearing officer concluded that the Board had sustained its burden of establishing its charge that on November 21, 1987, plaintiff had transported two female students, namely, Cynthia White and Reidie Mitchell, to his home, where they were "permitted to drink intoxicating beverages to the extent that Cynthia White became intoxicated."

Although the hearing officer concluded that the Board had failed to establish its other charges, he found that plaintiff's "taking the two students to his home unchaperoned and permitting them to drink intoxicating beverages" constituted "either immoral behavior or

'other sufficient cause' [for dismissal] under Section 10—22.4" of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4). The hearing officer further found that the offending conduct established by the Board was not remediable, and he ruled that plaintiff had received all the process to which he was due. Accordingly, the hearing officer sustained the Board's motion to dismiss plaintiff from his employment, and plaintiff's employment was thereby terminated.

As authorized by sections 24—12 and 24—16 of the School Code (Ill. Rev. Stat. 1987, ch. 122, pars. 24—12, 24—16), plaintiff then sought administrative review of the hearing officer's decision in the circuit court of St. Clair County pursuant to article III of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). Following a hearing, the circuit court upheld the hearing officer's decision, and plaintiff now appeals.

■ On this appeal, plaintiff argues, as he did before the circuit court, that his due process rights were violated by the procedure used to discharge him. In support of his claim plaintiff cites *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487. That case involved the termination of two Ohio public employees. Under Ohio law, those employees could be terminated only for cause. The United States Supreme Court held that the employees therefore had a property right in continued employment and that they could not be deprived of that right without due process. The question then became how much process was due.

The record showed that Ohio law did provide that if such employees were terminated, they were entitled to a full administrative hearing following the termination and to judicial review of the administrative decision. The Supreme Court held, however, that this was not sufficient. Rather, the Court held that in addition to the post-termination administrative procedures provided by Ohio law, the State was also required to provide notice of the charges and an opportunity to respond to those charges before the termination took effect. 470 U.S. at 545-47, 84 L. Ed. 2d at 506-07, 105 S. Ct. at 1495-96.

■ In this case, plaintiff claims that the *Loudermill* standard was not met because he was not adequately apprised of the charges against him or given an opportunity to respond to those charges before he was dismissed. This is factually and legally incorrect. Plaintiff's argument is premised on the assumption that he was actually discharged on January 4, 1988, when the Board adopted its motion calling for his dismissal. Such was not the case. A motion for dismissal filed pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12) is not itself an order of dismissal.

The only time a motion for dismissal will operate to terminate a tenured teacher is where the teacher does not request a hearing on the charges against him. Where, as here, a hearing is requested, no dismissal occurs until the hearing officer renders his decision. Ill. Rev. Stat. 1987, ch. 122, par. 24—12; *Combs v. Board of Education* (1986), 147 Ill. App. 3d 1092, 1099, 498 N.E.2d 806, 811.

■ Pending a hearing on a school board's motion for dismissal, the most that the board can do by statute is suspend the teacher. (Ill. Rev. Stat. 1987, ch. 122, par. 24—12.) That is precisely what the Board did here. Indeed, the statutory notice which the Board sent to plaintiff on January 6, 1988, expressly indicated that he was being *"suspended* pending any hearing which is conducted in connection with this matter," and that his *"suspension* [was] effective January 4, 1988."* (Emphasis added.)

■ This suspension was to be without pay. Proceedings to suspend tenured teachers without pay are not governed by the procedural requirements of section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12). Although tenured teachers who face suspension without pay are therefore not entitled to a section 24—12 hearing, they are nevertheless entitled to procedural due process. The requirements of procedural due process are satisfied in the context of a suspension hearing where the school board acts pursuant to an established policy, provides written notice of the charges upon which the suspension proceedings are based, and provides a reasonable opportunity for a hearing at which the teacher may be represented by counsel and is permitted to cross-examine witnesses and to present evidence on his own behalf. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 406-07, 515 N.E.2d 1211, 1230.

There can be no dispute that these requirements were met here. The Board commenced suspension proceedings against plaintiff pursuant to Board Policy No. 520.17. In the notice of charges and bill of particulars which the Board served on plaintiff on January 6, 1988, the Board notified plaintiff that a suspension hearing would be held on the charges set forth therein. In accordance with the Board's policy, the Board appointed an independent hearing officer to preside over that hearing, and the hearing was conducted one week later. Plaintiff has not claimed that he did not have adequate time to prepare for this hearing. At the hearing, which lasted two days, plaintiff was represented by counsel, and there is no suggestion in the record that he was denied the opportunity to cross-examine witnesses or to fully present the evidence then available to him.

■ The hearing officer's determination was, to say the least, am-

biguous. Because of this ambiguity, the Board decided not to discontinue plaintiff's pay. Although plaintiff's suspension remained in effect, he was not removed from the payroll during the pendency of the dismissal proceedings. Suspending an employee with pay in this way pending a pretermination hearing was expressly sanctioned by the United States Supreme Court in *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 544-45, 84 L. Ed. 2d 494, 505-06, 105 S. Ct. 1487, 1495, where an employer "perceives a significant hazard in keeping the employee on the job." In view of the nature of the various charges against plaintiff, the Board in this case could certainly have perceived that allowing plaintiff to continue his classroom duties would have posed such a hazard.

■ Although plaintiff thus received not one, but two, hearings prior to his ultimate termination, he nevertheless suggests that his due process rights were violated because he was not given notice and an opportunity to be heard prior to the time the Board adopted its January 4, 1988, motion calling for his dismissal from employment. This argument is wholly without merit. As our previous discussion has indicated, due process requires only that plaintiff be given notice and an opportunity to be heard prior to his termination (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487), or prior to a suspension without pay (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 406-07, 515 N.E.2d 1211, 1230). Plaintiff has not cited, and we have not found, any authority which suggests in any way that a tenured school teacher is entitled to notice and an opportunity to be heard before dismissal or suspension proceedings are even initiated.

■ Plaintiff next contends that the circuit court erred in affirming the hearing officer's finding that plaintiff had, in fact, transported two female students to his home and permitted them to drink enough intoxicating liquor that one of them became intoxicated, as had been charged by the Board. This argument must also fail. Under section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—110), the findings and conclusions of an administrative hearing officer on questions of fact are considered to be *prima facie* true and correct. Only if the findings are against the manifest weight of the evidence can they be set aside. (*Board of Education v. Box* (1989), 191 Ill. App. 3d 31, 37, 547 N.E.2d 627, 630.) This is not such a case.

■ While the testimony adduced at the pretermination hearing was not entirely consistent, plaintiff himself admitted that on the evening of November 21, 1987, he picked up Cynthia White and Reidie Mitchell and drove them to his home. Both girls were students at

East St. Louis High School and were well known to plaintiff. Plaintiff picked up the girls after receiving a telephone call from Cynthia indicating that she had been drinking and could not return to her own home in that condition.

At plaintiff's house were snack foods, soda, wine and "wine coolers." When the group reached plaintiff's house, he offered the girls soda and chips. Plaintiff also testified, however, that Cynthia pointed to some wine on the refrigerator in the kitchen and "said we are still going to have something to drink later on." To this plaintiff responded, "That is fine." Plaintiff related that Cynthia then "asked a, couple things about the alcohol and I said to her yes, that is pretty good wine there if you have a taste for it."

Plaintiff did not remain at the house with the girls. Instead, he left for a dinner engagement. Before leaving, however, he did not lock up his liquor, nor did he tell the girls not to drink any of it. According to plaintiff, he simply told Cynthia "something again to the effect that if you go get drunk tonight, you are not going to like it, it is not all it is cracked up to be." Plaintiff also recalled that he "said a couple things about if you decide to go drinking tonight, you are going to have to be careful, don't mix your drinks and don't have any sweet drinks because you will be sick as a dog tomorrow."

Both Reidie and Cynthia testified that when plaintiff left for his engagement, they drank his wine. Although the girls apparently did not consume much, Cynthia testified that she had never had anything to drink before and that what wine she did consume caused her to become intoxicated. That Cynthia had become intoxicated was confirmed by Reidie and was not really ever denied by plaintiff.

By the time plaintiff returned home, Cynthia was asleep. Plaintiff attempted to "sober her up" by taking her into the bathroom, splashing water on her, and either yelling at her or slapping her. After plaintiff succeeded in rousing Cynthia, he drove Cynthia and Reidie from his home back to East St. Louis, where they lived. Although it was after midnight by this time, plaintiff did not drop Cynthia off in front of her house. Rather, he let her out of his truck at a school yard across from her house. He apparently did so because he thought that if she walked across the school yard in the chilly night air it would help her to "sober up."

By way of mitigation, plaintiff asserted that when he left his house on the evening of November 21, 1987, he had no actual knowledge that Cynthia and Reidie intended to consume alcohol at his house. Although plaintiff does not deny discussing the consumption of alcohol with Cynthia, he claims that he thought that this conversation

concerned Cynthia's plans to drink at someone else's house sometime later in the evening. The hearing officer evidently believed that this claim was simply not credible, and we see no basis for second-guessing his judgment. If plaintiff did not know, he should have known, under all of the circumstances present here, that Reidie and Cynthia would drink his liquor, if left unsupervised, and that they might become intoxicated in the process. There is therefore ample support for the hearing officer's finding that plaintiff "did transport the two female students to his house where they were permitted to drink intoxicating beverages to the extent that Cynthia White became intoxicated."

■ Plaintiff's third and final contention is that the hearing officer erred in concluding that his conduct was not remediable. This finding was significant because if conduct is remediable, the teacher is entitled to a written warning before being dismissed. Without such a warning, the Board is deprived of jurisdiction to terminate a teacher's employment for the causes given. If the teacher's conduct is irremediable, on the other hand, no written warning is required before dismissal action is initiated. *Fadler v. State Board of Education* (1987), 153 Ill. App. 3d 1024, 1028, 506 N.E.2d 640, 643.

■■ ■ As a general rule, the test for determining whether conduct is irremediable is (1) whether damage has been done to the students, faculty or school, and (2) whether the conduct resulting in that damage could have been corrected had the teacher been warned. (153 Ill. App. 3d at 1027, 506 N.E.2d at 643.) With respect to the first of these elements, there can be little doubt under the circumstances present here that the Board and the hearing officer could have concluded that plaintiff's conduct was detrimental not only to his relationship with his students, but also to the reputation of and faith in the faculty and school as a whole. In our society, public school teachers hold a special position of trust and moral leadership. Indeed, by statute they are obligated to inculcate their pupils with the virtues of "[h]onesty, kindness, justice and moral courage for the purpose of lessening crime and raising the standard of good citizenship." (Ill. Rev. Stat. 1987, ch. 122, par. 27—12.) To do what plaintiff did here is completely contrary to these principles.

We live in a time when substance abuse among young people has become pervasive. In recognition of this problem, our legislature has mandated the annual observance in public schools of " 'Just Say No' Day" as a day

> "on which children and teenagers declare and reaffirm their commitment to living a life free of drugs and alcohol abuse, and

as a day on which to hold and participate in appropriate special programs, ceremonies and exercises, in the public schools and elsewhere, tending to encourage children to lead a healthy lifestyle, aware and free of the dangers of using drugs and alcohol abuse." Ill. Rev. Stat. 1987, ch. 122, par. 27—20.2.

"Just Say No" is and must be more than an empty slogan. It is a call to action to help save a generation of young people from a blighted future. Teachers and parents must be united in this effort. Neither can succeed without the support and cooperation of the other. That this is so is amply demonstrated by the record before us. The evidence showed that Cynthia White's mother clearly disapproved of her drinking. She did what she could to discourage it, but no parent can possibly control a teenager every hour of every day, and as a result of plaintiff's irresponsible acts, her best efforts were rendered meaningless.

The public schools certainly cannot solve all our social problems. At a minimum, however, we believe that parents have the right to assume that the professional educators into whose hands they entrust the education and welfare of their children will not abuse that trust by providing their children with a haven for illicit and health-threatening behavior. When teachers conduct themselves as did plaintiff here, their conduct therefore does more than jeopardize the welfare of the particular students involved; it betrays the public trust and threatens the integrity of the entire public school system.

Plaintiff contends that his dismissal was nevertheless improper because the Board failed to establish the second element for determining whether conduct is irremediable, namely, whether the conduct resulting in the damage could have been corrected had the teacher been warned. This contention is wholly untenable. We are not dealing here with simple deficiencies in teaching or differences in methods of punishment. As in *Fadler v. State Board of Education* (1987), 153 Ill. App. 3d 1024, 1029, 506 N.E.2d 640, 644, we believe that the situation before us falls instead within the category of cases where the more appropriate focus is not whether the conduct itself could have been corrected by a warning, but whether the effects of the conduct could have been corrected. As in *Fadler*, we must conclude that the circumstances here are such that

"[a] warning, even if effective in stopping plaintiff's conduct, would not be effective in correcting the *** damage to the students or the damage to the reputation of the faculty, school district and plaintiff himself. *** Plaintiff's conduct has no legitimate basis in school policy or society. No purpose would be

served by giving plaintiff a written warning. We conclude, therefore, plaintiff's conduct is irremediable." 153 Ill. App. 3d at 1029, 506 N.E.2d at 644.

For the foregoing reasons, we hold that the circuit court was correct in sustaining the hearing officer's order of dismissal of plaintiff as a teacher in East St. Louis School District No. 189. Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK and HOWERTON, JJ., concur.