BOARD OF EDUCATION OF SPARTA COMMUNITY UNIT SCHOOL DISTRICT No. 140, Plaintiff-Appellant, v. THE ILLINOIS STATE BOARD OF EDUCATION et al., Defendants-Appellees.

Fifth District No. 5—90—0542

Opinion filed August 26, 1991.

David R. Smith and Edward J. Fisher, both of Nehrt, Sachtleben, Fisher, Smith & Kerkhover, of Chester, for appellant.

Ralph H. Loewenstein, of Deffenbach, Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, the Board of Education of Sparta Community Unit School District No. 140 (the School Board or Board), appeals from a judgment of the circuit court of Randolph County which upheld, on administrative review, the decision of an Illinois State Board of Education hearing officer which found that the School Board had no cause to dismiss defendant, Gary G. Stull, Jr., from his position as a tenured public high school teacher and that Stull should be reinstated with back pay and benefits. The sole question presented for our review is whether the hearing officer's decision is contrary to the manifest weight of the evidence. For the reasons which follow, we hold that it is. We therefore reverse.

The record before us established that defendant Stull was employed by the School Board as a high school teacher and softball coach. As we have just indicated, Stull was tenured, *i.e.*, he had entered upon "contractual continued service" pursuant to section 24—11 of the School Code (Code) (Ill. Rev. Stat. 1987, ch. 122, par. 24—11). In accordance with section 24—12 of the Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), which governs the removal or dismissal of teachers in contractual continued service, the School Board approved a motion to dismiss Stull from his position "for cause." The motion was based on Stull's relationship with two female students at the high school where he taught. Both of those students had initially come into contact with Stull because they were interested in playing on the softball team for which he served as coach, and the School Board charged that Stull's conduct with respect to these students was unprofessional and immoral.

As required by section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), the School Board served written notice of the charges upon Stull and appended to that written notice a bill of

particulars. The bill of particulars alleged various improprieties involving Stull and the two female students. Among these were that Stull had given unsolicited and uninvited kisses and hugs to the students, presented them with gifts, and written them letters expressing affection for and physical attraction to them.

Stull requested a hearing on the charges before a disinterested hearing officer pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12). From a list provided by the Illinois State Board of Education, Stull and the School Board selected Professor Milton Edelman to serve as the hearing officer. Edelman accepted his appointment and conducted a hearing on the matter in August of 1989.

Following that hearing, the parties submitted briefs, and on December 15, 1989, Edelman rendered his decision. In that decision, Edelman found that while Stull's "actions may, in some instances, have been unwise and shown poor judgment, *** they do not constitute just cause for dismissal." Edelman further determined that "[t]he evidence supports a finding that [Stull's] conduct is remediable." Accordingly, Edelman concluded that Stull should be "reinstated and made whole for all losses of wages and benefits resulting from his dismissal." As authorized by sections 24—12 and 24—16 of the School Code (Ill. Rev. Stat. 1987, ch. 122, pars. 24—12, 24—16), the School Board then sought administrative review of the hearing officer's decision in the circuit court of Randolph County pursuant to article III of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 et seq.). Following a hearing, the circuit court upheld the hearing officer's decision, and the School Board now appeals.

There is no dispute that tenured public school teachers may not be removed from employment except for cause. "Cause" is some substantial shortcoming which renders continuance in employment detrimental to discipline and effectiveness of service; something which the law and sound public opinion recognize as a good reason for the teacher to no longer occupy his position. (Fadler v. Illinois State Board of Education (1987), 153 Ill. App. 3d 1024, 1026-27, 506 N.E.2d 640, 642-43.) In this case, as we have indicated, the finding of cause by the School Board was based on various improprieties by Stull, including giving unsolicited and unwanted hugs and kisses and presenting gifts to the two female students involved. Stull argued that these incidents either did not occur as the students claimed or else could be interpreted innocently. The hearing officer agreed, and we will not disturb his findings on this point. After all, the findings and conclusions of an administrative hearing officer on questions of

fact such as these are considered to be *prima facie* true and correct (Ill. Rev. Stat. 1987, ch. 110, par. 3—110) and may be set aside only if contrary to the manifest weight of the evidence (*Massie v. East St. Louis School District No. 189* (1990), 203 Ill. App. 3d 965, 971, 561 N.E.2d 246, 250).

This, however, does not end our inquiry. The record shows that the allegations of improper physical contact and gift giving actually played a relatively minor role in the Board's decision to discharge Stull. The primary reason the Board sought to fire him was because of the series of letters he sent to the two female students. Given the importance of those letters to the case, we shall quote from them at length.

To the first student, whom we shall identify only as C.O., Stull wrote, in part:

"I care for you a lot, Lady. You're a very pretty young woman and I really appreciate your looks, personality and maturity. You mentioned the fact that you were glad of my attentions. I am taking this as a fact that you liked holding hands, hugging, touching and kissing as much as I did. I may be *way* off track. I can still feel your closeness on Fri. today as I did then. Still feel, taste & enjoy our kiss, wanting to hold you and have another. I thought about and still felt it all weekend. Thanks for that.

I will be more distant. If you can let me know who has said anything I will especially back off when this person is around. What I feel for you won't change. It hurts to think of the happiness I will miss. When we don't have people around can I touch, hold and enjoy the feelings I have? A simple yes or no will do.

\* \* \*

I love you lots!" (Emphasis in original.)

Stull's correspondence with the second student, whom we shall identify as T.A., was much more extensive. Twelve different letters to her were adduced by the School Board at the hearing. One of those, identified as School Board exhibit 2, states:

"Hi Doll. (Frogger)

\* \* \*

Neat letter today[.] I've read it 4 times already. (except for the 'hey ya butt!!!')

\* \* \*

As for thanking me. Hey. Being around is enough. A smile, a hug. Looking pretty the way you do. Who needs words when I

have these things!! I want you to know that I'll always be here for you. A shoulder to lean or cry on, a hand to hold[,] an ear to listen, I'm here. I was only kidding this A.M. *** Any time for you, Babe.

I'm glad you think my eyes are pretty. I look forward to seeing how you look everyday. Seeing a pretty lady like you starts my day off right.

I care for you an awful lot, [T.]. I have a hard time keeping my thoughts off of you. Wonderin [sic] if you're smilin', what class you're in[,] how cute you are. All these & more.''

In another letter, identified as School Board exhibit 3, Stull confessed:

"Hey Lady.

* * *

I feel weird about my feelings. I have never felt this way since I fell for my other girl. (Know who?) I get goose bumps being around you and feel queasy in my stomach when I know I get to see you for a little bit. I love you Lady. I think more than you will know.

I am planning on being around. Even if something would come up. You [indecipherable] or me change jobs, you would still be a part of my life. A big part. I think about you a bunch. Probably too much, but I can't keep my mind off you.

Thanks for saying I'm keeping you from a living hell. Please know that I am here for you. Whenever, wherever, or whatever you want, need, desire, call and I'll do all I can to make your wish come true.

* * *

Anybody take your place?? I'm yours, Lady. It's almost frightening what I would consider doing if you asked. There is no more room in my heart for anyone else. You have helped fill an empty void. Thanks.

* * *

Why do I spoil you?? Cuz I love you. I think its great to see your happy smile, the flash and glisten of your eyes the way you look at me when I do something to spoil you. These are just a few reasons why.

* * *

The last part of your note I just got done reading for the 5th time. Thank you for caring the way you do and not thinking less of me for my feelings toward you. I'd love to have some time just for us. Maybe someday. Well, it has been a lot easier

writing with this note here in front of me. *** I hope I can see you both Thurs & Fri sometime. Need to go. I love you."

In another letter, designated as School Board exhibit 4, Stull wrote:

"Dearest [T.]

* * *

*** Whenever I have something good in my life (you) I have a tedency [sic] to loose [sic] it, and I'd hate to loose [sic] what we have.

* * *

Have my feelings changed?? Maybe, but only for the better and stronger. It was hard getting through vacation time only thinkin' 'bout you and not seeing you. I enjoyed the talk we had over break that one day you pitched (or at least tried to). Seeing you relax on the couch, I really wanted to come over and join you. Oh, well...."

In a letter designated as School Board exhibit 6, Stull continued in the same vein:

"Hey Lady!!

* * *

I haven't told you yet but you look neat today. You have a sexy right knee. (That's not all, either) Ha!! Ha!!

* * *

Last Thurs when you said it was lonely when I wasn't there 9th hour. I know what you mean. My day didn't end right. I was trying to figure out what was wrong and then I remembered I didn't see [T.].

As far as looking retarded wearing the skirt last week. [T.] if that's retarded, send me to the crazy house. You looked super and the reason people were staring was because you did look so good. Anytime you want to dress up for me is fine with me. *I* appreciate a beautiful young woman when I see one. I am imaging [sic] you in your skirt now and I must say, I can imagine pretty well.

* * *

I must be nuts, but sometimes I just want to hold you close. This A.M. when you opened your present and smiled, you looked so very pretty and I really felt awful close to you. I wanted to let you know how deeply I care for you and I hope you can and do know that my feelings are strong for you. I try to see your smile, your eyes and how they sparkled when you teased me. Hear you laugh and giggle when your [sic] happy.

Thanks for being around. I love you bunches." (Emphasis in original.)

In a letter identified as School Board exhibit 7, Stull went on:

"Hey Babe[:]

\* \* \*

Why do I say you look neat?? Look in the mirror, Lady. Pretty hair (that my fingers get caught in)[,] pretty sensual face, [d]eep eyes that I'd love to crawl into, soft wonderful lips, and a great body to hold it up. Really, [T.] you are a pretty lady and a lot of time the clothes you wear suit you and you *do* look great. *BUT* you could wear rags and as long as you smile, you'd be beautiful.

I'm happy you like the bear. Please consider the sweatshirt as a gift also. K?? K!!!

\* \* \*

Stupid skirt?? No way. Sexy is more like it.

\* \* \*

I was serious this A.M. about wanting to hold you close when you cried. Hold you close & not let you go. Then you stopped crying & I lost my chance. Oh, well. [B]etter luck next time.

I still feel its [*sic*] neat, how our feelings have grown. I liked you. But I had no visions of falling head over heels for you. I am so happy when your [*sic*] around and when your [*sic*] not I can imagine and its [*sic*] *almost* as good.

Want to hear somethin [*sic*] really dumb?? Holdin [*sic*] hands[,] takin [*sic*] you home yesterday was neat. Going to the game last night I had an itchy nose & my hands still smelled like you. It was neat!! Almost like havin [*sic*] you close!! Is that silly or what?? Love you." (Emphasis in original.)

There are other passages of similar import. These are among the worst.

The hearing officer believed that these letters were not cause for termination because they "do not show sexual intent." Although he acknowledged that "some of the wording in the letters appears to have sexual meaning," his position was that the letters should not be read in isolation. Instead, he thought they must be considered in the context of Stull's philosophy of teaching, which was that an educator should address "the whole student rather than just teaching a particular subject matter." In the hearing officer's view, Stull's letters were aimed at advancing this philosophy by "bolstering the self-image of these young women, especially [T.A.] who needed help with a number of personal problems."

■ When considering documentary evidence such as these letters, we are not bound by the hearing officer's findings of fact, but are free to examine the evidence and reach an independent conclusion. (*National Boulevard Bank v. Citizens Utilities Co.* (1982), 107 Ill. App. 3d 992, 1005-06, 438 N.E.2d 471, 481.) In our view, the hearing officer's interpretation of the letters is wholly untenable. These letters are overtly sexual. Indeed, if one did not know their authorship, one would think they were written by some libidinous high school suitor, not a professional educator who was more than twice the students' age. Aside from incidental chitchat about softball and such (which we have not included in our excerpts), they speak of little else but physical attraction and desire.

The sexual nature of the letters was confirmed by a clinical psychologist who testified at the hearing. He opined, as had the Department of Children and Family Services, that Stull's conduct, including these letters, constituted sexual exploitation of the young women in question. The hearing officer did not give the psychologist's testimony much weight, but the testimony of a psychologist was hardly needed to understand Stull's actions in this case. To ignore the blatantly sexual basis of his overtures is to forsake common sense. This was not simply a matter of morale boosting. It was seduction. That surely is something which no legitimate pedagogical philosophy could possibly sanction as a proper tool in the education of children.

The young women in question came to Stull because he was the softball coach and they wanted the opportunity to play on his team. They, and their parents, had a right to expect that they would be given that opportunity without having to be subjected to the type of conduct involved here. The students looked to Stull for guidance. What they got was a come on. Given their apparent emotional turmoil and vulnerability, which the hearing officer himself recognized, this was probably the last thing they needed. In the end, Stull's attention to them merely exacerbated their problems. Far from making them better students or athletes, it ultimately resulted in their forsaking softball entirely. And when they eventually rebuffed Stull and came forward to complain of what he had done, they were actually ostracized by their peers, who blamed them for daring to bring Stull's reputation into question. The victims were thus victimized again. For all these reasons, the School Board could certainly have concluded that Stull's actions were immoral and were detrimental to the discipline and effectiveness of his continued service in the school district.

The hearing officer found that even if Stull's conduct were improper, it could be remedied. The issue of remediability is important,

because if conduct is remediable, a teacher is entitled to written warning before being dismissed. Without such warning, a School Board has no jurisdiction to terminate a teacher's employment for the conduct charged. If the teacher's conduct is irremediable, on the other hand, no written warning is required before dismissal action is initiated. *Massie v. East St. Louis School District No. 189* (1990), 203 Ill. App. 3d 965, 973, 561 N.E.2d 246, 251.

■ As a general rule, the test for determining whether conduct is irremediable is (1) whether damage has been done to the students, faculty, or school, and (2) whether the conduct resulting in that damage could have been corrected had the teacher been warned. (203 Ill. App. 3d at 973, 561 N.E.2d at 251.) Whether a cause for dismissal is remediable is a question of fact, the initial determination of which is the responsibility of the School Board. The Board's decision should not be overturned unless the reasons given for dismissal are against the manifest weight of the evidence or the Board acted in an arbitrary or capricious manner. (*Fadler v. Illinois State Board of Education* (1987), 153 Ill. App. 3d 1024, 1027, 506 N.E.2d 640, 643.) In this case, the School Board did find that Stull's conduct was irremediable, and the hearing officer had no proper basis for overturning that determination.

Evidence adduced at the administrative hearing demonstrated the adverse effect Stull's conduct had on his victims and the potential harm which might befall other female students if Stull were not removed from his position. The hearing officer did not give much credence to this evidence. Indeed, he seems to have trivialized the entire episode. He even accused the young women of having misinterpreted Stull's motives. We, however, fail to see how anyone could reasonably come to such a conclusion based upon the record presented here. Even if one discounts entirely the testimony of the young women and the psychologist, the import of Stull's letters is all too clear. That such conduct has profound harm on the students involved, the student body as a whole, and the very operation of the school's educational enterprise seems to us to be self-evident.

The hearing officer appears to have made much of the fact that, under the record, Stull "would have stopped writing letters, stopped hugging students, never offered even light kisses, not given presents, had he known the Board's wishes." But this is not enough. A discharged teacher could always say that if only he had been told not to do something wrong, he would have refrained from the offending conduct. This would virtually eliminate the ability of school districts to discharge teachers, for "[i]f it took only a promise never to engage in

the improper conduct again, it is clear that it would be very difficult, if not impossible, to satisfy the second prong of the remediability test." (*Board of Education of Argo-Summit School District No. 104 v. State Board of Education* (1985), 138 Ill. App. 3d 947, 952-53, 487 N.E.2d 24, 27, quoted in *McBroom v. Board of Education of District No. 205* (1986), 144 Ill. App. 3d 463, 473, 494 N.E.2d 1191, 1198.) For this reason, our court has recognized that the second prong of the remediability test is not appropriate in situations such as this one involving immoral conduct by a teacher. In such cases, the more appropriate focus is not whether the conduct itself could have been corrected by a warning, but whether the effects of the conduct could have been corrected. *Fadler v. Illinois State Board of Education* (1987), 153 Ill. App. 3d 1024, 1028-29, 506 N.E.2d 640, 644.

As in *Fadler* and our more recent decision in *Massie v. East St. Louis School District No. 189* (1990), 203 Ill. App. 3d 965, 974-75, 561 N.E.2d 246, 252, we believe the circumstances here are such that

> "[a] warning, even if effective in stopping plaintiff's conduct, would not be effective in correcting the *** damage to the students or the damage to the reputation of the faculty, school district and [teacher] himself. *** [The teacher's] conduct has no legitimate basis in school policy or society. No purpose would be served by giving [the teacher] a written warning. We conclude, therefore, [that the teacher's] conduct is irremediable." *Fadler*, 153 Ill. App. 3d at 1029, 506 N.E.2d at 644.

For the foregoing reasons, we hold that the circuit court erred in sustaining the hearing officer's decision that Stull should be reinstated as a teacher with back pay and benefits. The School Board had cause to discharge Stull, and its discharge decision should have been upheld on administrative review. Accordingly, the judgment of the circuit court of Randolph County is reversed.

Reversed.

HOWERTON and GOLDENHERSH, JJ., concur.