THE BOARD OF EDUCATION OF JOLIET TOWNSHIP HIGH SCHOOL DISTRICT No. 204, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

Third District    No. 3—01—0324

Opinion filed May 21, 2002.

McDADE, J., dissenting.

Lawrence J. Weiner (argued) and Alan M. Mullins, both of Scariano, Ellch, Himes & Petrarca, Chtrd., of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (John P. Schmidt, Assistant Attorney General, of counsel), for appellee Illinois State Board of Education.

Stephen A. Yokich and Peter C. Swanson (argued), both of Cornfield & Feldman, of Chicago, for appellee Sandra B. Betts.

PRESIDING JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Board of Education of Joliet (Board) dismissed defendant Sandra Betts, a tenured teacher, for misuse of sick leave. Betts requested an administrative hearing, and the hearing officer reinstated her. The trial court affirmed the hearing officer, and we affirm the trial court.

The contractual agreement between the Joliet school district and its teachers provides for several forms of leave for teachers, including professional, personal, and sick leave. It also describes the proper uses of each type of leave. Attendance at a professional conference is not a proper use of sick leave under the contract. The contractual agreement does not state the consequences of misuse of leave; however, it does state that absences not covered by any form of leave will result in a deduction from a teacher's paycheck.

Betts was a teacher in the Joliet school district. In 1997, she requested four professional leave days to attend a professional conference. Betts learned on the day before she was scheduled to leave for the conference that the administration had lost her request for leave; as a result, the request had not been approved. Because she had already made arrangements for her attendance, Betts took personal leave days for the first two days of the conference. She told her supervisor that she would return to school and miss the last two days of the conference. However, she did not return as promised. Instead, she had her husband call the school and report her ill so she could use sick leave days for the end of the conference.

Betts later discussed her attendance of the conference with her superiors and requested conversion of the two "personal leave" absences to "professional leave" absences. Administrators granted her request and made no mention of any consequences for her use of sick leave to attend the conference.

The next year, Betts wished to attend the same annual professional conference. She chose not to seek professional leave for that conference. Instead, she took sick leave days for the days of the conference, telling her department head that her sister was ill and needed her attention.

Through an internal investigation, the school administration found that Betts used sick leave to attend the 1998 conference. The administration reported its findings to the Board, and the Board dismissed her.

Betts requested a hearing, and the hearing officer determined that her conduct was remediable. He held that she could not be dismissed without first receiving a written warning.

The Board sought administrative review of the hearing officer's decision in the circuit court, which then affirmed the hearing officer. The Board appeals, asserting that: (1) the hearing officer improperly applied the legal test of irremediability; (2) the hearing officer's findings were against the manifest weight of the evidence; (3) Betts already received a sufficient warning; and (4) allowing Betts to return to her teaching position violates public policy.

1

The Board claims that Betts' actions constitute shocking and immoral conduct. Therefore, her conduct should be considered irremediable, even if a warning could have altered it. We disagree.

■ Section 24—12 of the School Code provides that before teachers may be dismissed for remediable conduct, they must receive a written warning to cease that conduct. 105 ILCS 5/24—12 (West 1998). However, a teacher may be immediately dismissed for irremediable deficiencies or actions. 105 ILCS 5/24A—5 (West 1998). Conduct is irremediable if it (1) causes damage to the students, faculty or school and (2) could not have been corrected if the teacher's superiors had warned her. *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143, 153 (1977).

The second prong of the test is not applicable if the conduct in question is "immoral conduct" that " 'has no legitimate basis in school policy or society.' " *Board of Education of Sparta Community Unit School District No. 140 v. Illinois State Board of Education*, 217 Ill. App. 3d 720, 729 (1991), quoting *Fadler v. State Board of Education*, 153 Ill. App. 3d 1024, 1029 (1987). Shocking or criminal conduct is never remediable. See *Sparta*, 217 Ill. App. 3d at 729.

■ To dispense with the second prong of *Gilliland*, courts must find conduct substantially more shocking or immoral than Betts' actions here. See *Sparta*, 217 Ill. App. 3d 720 (improper sexual advances

toward young girls); *Massie v. East St. Louis School District No. 189*, 203 Ill. App. 3d 965 (1990) (allowing teenage girls to drink alcohol in a teacher's home); *Fadler v. State Board of Education*, 153 Ill. App. 3d 1024 (1987) (sexual contact with young girls); *McBroom v. Board of Education of District No. 205*; 144 Ill. App. 3d 463 (1986) (theft from a student's locker). Her improper use of sick leave, while hardly exemplary behavior, is not so odious that the court can dispense with a finding that it could not have been corrected with a warning.

Courts have applied both prongs of *Gilliland* to actions such as Betts'. See *Szabo v. Board of Education of Community Consolidated School District 54*, 117 Ill. App. 3d 869, 875 (1983) (using sick leave to pursue other employment); *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101 (1997) (using vacation days even though informed that permission to do so had been revoked at the last minute). The hearing officer correctly found that Betts' actions were remediable.

### 2

The Board also claims that since Betts' contract made clear that attendance at a professional conference was not a proper use of sick leave, her actions were intentionally insubordinate and could not have been changed by any warning. See *Yuen v. Board of Education of School District No. 46*, 77 Ill. App. 2d 353 (1966); *Christopherson v. Spring Valley Elementary School District*, 90 Ill. App. 3d 460 (1980).

■ Whether a cause for dismissal is irremediable is a question of fact. *Szabo*, 117 Ill. App. 3d at 872. The findings of an administrative hearing officer on questions of fact are considered to be *prima facie* true and correct and cannot be set aside unless they are against the manifest weight of the evidence. *Massie*, 203 Ill. App. 3d at 971. Such findings are against the manifest weight of the evidence only when all reasonable and unbiased persons would agree it is clearly evident that the hearing officer erred and should have reached the opposite conclusion. *Round Lake*, 292 Ill. App. 3d at 109.

In *Yuen* and *Christopherson*, teachers defied direct warnings from their school boards that they would not be allowed absences on particular days; they were told that they could be fired if they disregarded these directives. See *Yuen*, 77 Ill. App. 2d 353; *Christopherson*, 90 Ill. App. 3d 460. Both teachers proclaimed that they would not abide by the decisions of their respective boards, and they did not. Both courts found that this direct, open challenge to the authority of a school board was behavior that could not be changed by a warning. See *Yuen*, 77 Ill. App. 2d 353; *Christopherson*, 90 Ill. App. 3d 460.

Misusing leave days, however, even in derogation of a known school

policy, is not equivalent to open defiance of a school board's authority. See *Szabo*, 117 Ill. App. 3d at 873 (finding that intentional misuse of sick leave was remediable and distinguishing *Yuen* and *Christopherson*).

At the hearing, Betts testified that she would not have used her sick leave to attend a conference if she had been warned of the consequences and that the administration had led her to believe that use of sick leave for this purpose was not a serious offense. Though the Board elicited some contradictory testimony, the opposite conclusion was not overwhelmingly obvious. It is not our place to reweigh the evidence presented at an administrative hearing. See *Round Lake*, 292 Ill. App. 3d at 109. Based on Betts' testimony and demeanor at her dismissal hearing, the hearing officer found that she was not intentionally insubordinate and that her conduct could have been changed by a warning. We cannot find that the hearing officer's holding was against the manifest weight of the evidence.

3

The Board also claims that no written warning was necessary in this case because Betts had previously received a notice to remedy. The record reveals that Betts did receive an earlier notice to remedy unrelated to any misuse of leave, that she fully cured all of the deficiencies in that notice, and that the school administration certified that she had satisfactorily completed that remediation. Thus, the notice to remedy could not serve as a warning to correct Betts' misuse of leave in this case.

4

Finally, the Board claims that Betts' reinstatement was against public policy because her absences amounted to a theft of public funds. Classifying this type of conduct as theft is "overly harsh." *Szabo*, 117 Ill. App. 3d at 875. Though Betts' conduct is certainly not laudable and not the best example for students, she appears to have had no criminal intent, and we will not imply any. We cannot say that the hearing officer's finding that her conduct is remediable is against public policy.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN, J., concurs.

JUSTICE McDADE, dissenting:
For the reasons set out below, I would find the trial court's affir-

mance of the administrative decision to be contrary to the manifest weight of the evidence and would reverse.

In October 1997, Mrs. Betts made a timely application for professional leave to attend a conference of the National Conference of Teachers of English (NCTE) occurring on four days in November. Because of administrative errors, the application was not acted upon and Mrs. Betts' supervisor suggested that she use "personal" days to attend. Because she did not have four personal days left, Mrs. Betts informed her supervisor that she would only attend two days of the conference and would forego the last two days and return to school. Instead, she had her husband call to say she was sick and would not be coming in. Regarding those two days, Mrs. Betts would later testify that she had never intended to be in school for them and had intentionally deceived the Board so she could attend the entire conference.

In May 1998, Mrs. Betts wanted to attend the graduation of a former student but had already used all but one-fourth day of her personal leave allotment for that year. She sought, and was allowed, reinstatement of the two personal days she had used to attend the 1997 conference. She did not direct any attention to the two days' sick leave by including them in her reinstatement request.

In February 1998, following her attendance at the 1997 NCTE conference, a grievance was filed against Mrs. Betts by 20 students. The focus of the grievance was her claimed failure to attend her classes one to two days per week, to provide adequate assistance with preparation for an upcoming examination, and to prepare for those classes she *did* attend. In response to their complaint, Mrs. Betts admitted that she had not kept any grade or attendance records and had, for this reason, given all of her students B or B- grades. The admitted deficiency was remediated.

During school year 1996-97, Mrs. Betts had taken 16 professional leave days. Fearing that she intended to repeat that pattern in 1997-98, her principal, Craig Spiers, sought and got a list of Mrs. Betts' professional commitments for the current school year. In response, Spiers advised her to follow through on those commitments but indicated to her that the number of professional leave days would be limited the following year by a policy that he intended to propose and that he expected the Board to adopt. Although his proposal was ultimately not approved, Mrs. Betts was aware of his concern. After February 1998 she was also aware that her students found her attendance and teaching performance inadequate to their needs.

Because of this knowledge, and her belief, which she acknowledged during the hearing, that a request by her for professional leave would

not be granted, Mrs. Betts did not even seek such leave to attend the November 1998 NCTE conference. She *had*, however, registered in October for the conference. To ensure her ability to attend, she falsely informed her supervisor on November 16-17 that her sister was scheduled for surgery and requested family medical leave to help her out. The dates of her sister's purported surgical need coincided with the conference dates. Investigation disclosed that Mrs. Betts was, in fact, in attendance at the conference, not with her sister. She stated at the hearing that, because of her conference responsibilities, she was "going to go no matter what."

In the face of these facts, the hearing officer found that, although her conduct was "willful, in the dictionary sense of the term," he did "not believe that she [acted knowingly] in order to flaunt or defy the Employer's legitimate interests." I believe that this finding is against the manifest weight of the evidence, including Mrs. Betts' own admissions of deliberately lying to frustrate the perceived efforts of her supervisors to curb her absences and to further her own intention of attending the conference "no matter what."

I have no quarrel with the cases of *Szabo v. Board of Education of Community Consolidated School District 54*, 117 Ill. App. 3d 869 (1983), and *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101 (1997), which have found the unauthorized use of sick and vacation days to be remediable in certain circumstances. In my opinion, however, Mrs. Betts' conduct, as shown by the overwhelming weight of the evidence, amounts to deliberate deception and intentional insubordination and, therefore, falls within the controlling rule established by this court in *Christopherson v. Spring Valley Elementary School District*, 90 Ill. App. 3d 460, 462, 413 N.E.2d 199, 201 (1980) (finding that "[o]nce the willful violation [has] occurred, the damage [has been] done.") I believe the hearing officer's determination that Mrs. Betts was "capable of remediation if she had been warned in the first instance" is contrary not only to her sworn testimony at the hearing but also to this court's decision in *Christopherson*.

In light of the specific facts with which we have been presented in this case, I respectfully dissent.